**DAVIS et al. v. WHITE, County Tax Collector, et al. (No. 9224.)\***

(Court of Civil Appeals of Texas. Dallas. Feb. 23, 1924. Rehearing Denied March 22, 1924.)

1. **Constitutional law ☞48—Statute presumed valid until clearly shown unconstitutional.**

A statute is presumed valid until its violation of the Constitution is shown beyond ·a reasonable doubt.

2. **Constitutional law ☞70(3)—Wisdom, justness, or motives of statute not considered.**

Whether a law is unwise, unjust, mischievous in its tendencies,' or was probably enacted in response to the activities of private interests, cannot be considered by the courts, which will not invade the Legislature's realm for mere considerations of reason, wisdom, or questionable motives.

3. **Constitutional law ☞45—Court should declare act unconstitutional where clearly so.**

The court should declare an act unconstitutional and void when it appears to be so beyond a reasonable doubt.

4. **Theaters and shows ☞3—Traveling shows subjects for occupation tax.**

Traveling shows are proper subjects for occupation tax under Const. art. 8, § 1.

5. **Licenses ☞7(2)—Classification of occupations must be reasonable and natural.**

Classification of occupations for taxation must be reasonable and natural, neither capricious nor arbitrary, and must rest on some difference naturally, ·reasonably, and justly related to the act in respect to which the classification is proposed.

6. **Licenses ☞7(3)—Occupation tax on traveling shows held unconstitutional.**

Acts 38th Leg. 3d Called Sess. (1923), c. 6, amending Rev. St. 1911, art. 7355, § 13, by imposing (sections 1, 2) an occupation tax on traveling shows not exhibiting in regularly established theaters subject to such a tax under section 4, held in violation of Const. art. 8, § 2, with respect to uniformity of such taxes, as based on a capricious and arbitrary classification, without good reason for the difference, which is in the places of exhibition, not in the shows.

7. **Licenses ☞7(1)—Act taxing traveling shows held not regulatory measure under police power.**

Acts 38th Leg. 3d Called Sess. (1923), c. 6, amending Rev. St. 1911, art. 7355, § 13, by imposing occupation taxes on traveling shows not exhibiting in regularly established theaters (sections 1, 2), is not a regulatory measure under the police power to subject theaters, moving picture shows, etc., to reasonable regulation necessary to safeguard the public health, morals, and general welfare, but a revenue measure controlled by the provisions of Const. art. 8, §§ 1, 2, with respect to the subjects and uniformity of such taxes.

8. **Statutes ☞64(1)—Valid portion of ·act not affected by invalidity of severable portion.**

If an unconstitutional portion of an act is severable from and independent of a valid portion, the former will be stricken and the latter permitted to stand, especially where the statute provides for two distinct subjects.

9. **Statutes ☞64(8)—Act taxing established theaters held not invalid because of unconstitutionality of sections taxing traveling shows.**

Acts 38th Leg. 3d Called Sess. (1923), c. 6, §§ 3, 4, imposing occupation taxes on established theaters, etc., held not invalid, because of the unconstitutionality of section 1 (amending Rev. St. 1911, art. 7355, § 13) and section 2, imposing such taxes on traveling shows not exhibiting in such theaters.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Suit by Guy ßert Davis and others against Fred White, as Tax Collector of Navarro County, and another. Judgment for defendants, and plaintiffs appeal. · Reversed and rendered.

J. S. Simkins and J. S. Callicutt, both of Corsicana, for appellants.

B. W. George, of Corsicana, and Strickland & Seagler, of San Antonio, for appellees.

LOONEY, J. Appellants brought suit in the 'district court of Navarro county against Fred White, tax collector, and Ballard George, county attorney, of Navarro county, for the issuance of a perpetual injunction restraining the county officials named from collecting the occupation taxes imposed by an amendment to article 7355, Revised Civil Statutes of 1911, adopted by the Thirty-Eighth Legislature, and to prevent criminal prosecution. The suit is based on the contention that the act of the Legislature in question is unconstitutional for the following reasons: (1) That it is in conflict with both the state, and federal Constitutions, in that its enforcement against appellants will result in taking their property without adequate compensation; and (2) that it violates section 2, article 8, of the Constitution of the state, in that the occupation taxes imposed by said act are not equal and uniform upon the same classes of subjects.

The county officials answered by denying the allegations of appellants, affirmed the validity of the statute in question, and admitted that they had, as officials, demanded of the appellants, and are now demanding, the payment of the occupation taxes imposed by the statute, and had threatened criminal prosecutions for failure to pay same.

The case was tried before the court without the intervention of a jury, and resulted in judgment for appellees, to which appellants excepted, gave notice of and have perfected their appeal.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused April 9, 1924.

It is necessary to notice but one of the several assignments of error urged by appellants.

By an appropriate assignment, appellants contend that the judgment below, based on the provisions of chapter 6, Acts of the Third Called Session of the Thirty-Eighth Legislature, is erroneous, for the reason that the occupation tax imposed by the act on theatrical, dramatic, musical comedy, and other similar shows sought to be collected from appellants by appellees violated the equality and uniformity provisions of section 2, art. 8, of the Constitution, and is therefore void.

Appellants owned and exhibited a show in Navarro county taxable under the statute in question if the same is a valid law, and in such view the judgment below should be affirmed; otherwise, the cause should be reversed and rendered for appellants.

[1, 2] In considering the constitutionality of a statute, it is but a decent respect due to the wisdom, integrity, and patriotism of a co-ordinate branch of the state government, by which the law is passed, to presume in favor of its validity until its violation of the Constitution is shown beyond a reasonable doubt. We have not considered the propositions that the law is unwise, unjust, or that it was probably enacted in response to the activities of private interests. The courts are not charged with the duty of correcting every abuse arising from the exercise by the Legislature of its conceded authority; to do so would be to obliterate all distinction existing between the different departments of the state government. If the act in question is unwise, unjust, or mischievous in its tendencies, relief must be obtained from the Legislature. Courts will not, for mere considerations of reason, wisdom, or questionable motives on the part of members of the Legislature, invade its realm and undo its work. This we understand to be a time-honored rule of conduct, or the attitude of mind, rather, in which a court considers the validity of a statute under an attack against its constitutionality.

[3] When this much has been said, it may, with perfect propriety, be further said that the courts should never shirk the duty or fail to assume the responsibility of declaring an act of the Legislature unconstitutional and void when it appears so to be beyond a reasonable doubt. As said by Chancellor Kent (1 Com. 450):

"It is only by the free exercise of this power that courts of justice are enabled to repel assaults and to protect every part of the government and every member of the community from undue and destructive innovations upon their charter rights."

The act of the Legislature called in question was approved June 15, 1923, and is an amendment of section 13 of article 7355, Rev. St. 1911, and passed at the Third Called Session of the Thirty-Eighth Legislature.

Section 1 of the act levies, for each day's performance, an occupation tax, graded according to the amount charged for admission, and according to the number of inhabitants in the cities and towns where the shows are given, on "every theatrical or dramatic representation and from every musical comedy show, and from all similar amusements, for which pay for admission is demanded or received, that travel from place to place and give exhibitions, shows, or performances."

Section 2 reads:

"Provided, however, that nothing in this act shall be construed to impose a tax upon traveling shows giving exhibitions for private profit in regular established theaters subject to an occupation tax under this act."

Section 3 reads:

"This act shall not be construed to mean that a regular established theater showing pictures, vaudeville or theatrical presentations, or either of same, shall pay more than one occupation tax."

Section 4 provides for the collection of an annual occupation tax, graded in amount according to the number of inhabitants of the village, town or city, from "the owner, proprietor or operator of every regularly established and recognized opera house, theater, air dome, and other established places where moving picture or other entertainments or exhibitions are given for private profit."

Section 6, the emergency clause, contains the following:

"The importance of this legislation to raise needed revenues for public purposes and to equalize taxes on the show and amusements herein enumerated, creates an emergency," etc.

As we view the question presented, the exemption provided for in section 2 of the act quoted above destroyed the equality and uniformity of the tax imposed in so far as it affects traveling shows described in sections 1 and 2.

[4] The occupation tax provisions of our Constitution applicable to this case are parts of sections 1 and 2 of article 8.

That portion of section 1 applicable here is as follows:

"It [the Legislature] may also impose occupation taxes, both upon natural persons and upon corporations, other than municipal, doing any business in this state."

Section 2:

"All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax."

Undoubtedly the Legislature was well within its authority when it classified traveling shows as proper subjects for taxation. But, after establishing the class, was it authorized to exempt from the payment of the tax

those of the class who exhibit in a regularly established theater? We do not think so.

[5] One of the essential elements of a valid classification is that it must be reasonable and natural, neither capricious nor arbitrary; it must rest on some difference which bears a natural, reasonable, and just relation to the act in respect to which the classification is proposed.

Associate Justice Williams, of the Supreme Court, defined a valid classification for purposes of taxation and regulation in the case of Texas Co. v. Stephens, 100 Tex. 640, 641, 103 S. W. 485, as follows:

"The considerations upon which such classification shall be based are primarily within the discretion of the Legislature. The courts, under the provisions relied on, can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the business classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. This is the rule in applying both the state and federal Constitutions, and it has been so often stated as to render unnecessary further discussion of it."

[6] The act of the Legislature under consideration purports in general terms to levy the occupation tax on all traveling shows of the kind described in sections 1 and 2; but it does not do so, in that it exempts from the operation of the law shows that exhibit in regularly established and licensed theaters. This, in our opinion, is a capricious, arbitrary classification, and without good reason for the difference. The show is the same, whether exhibited in a licensed theater or elsewhere; the difference seized upon by the Legislature as a justification for the classification is not a difference in the shows, but in the places of exhibition.

[7] This act is not a regulatory measure under the police power of the Legislature, but is a revenue measure, controlled by the provisions of the Constitution above quoted. However, if it should be considered in any sense a police measure, even then the Legislature is prohibited from making an arbitrary or unjustifiable classification, such as was attempted in this act.

Theaters, moving picture shows, and all such mentioned in the act in question are proper subjects for police regulation. The public aspect that they present renders them of public concern; therefore they may be subjected to such reasonable regulation, in harmony with state and federal Constitutions, as is necessary to safeguard the health, morals, and general welfare of the public, and, if licensed theaters had been thus regulated by the Legislature, doubtless there would exist good reason for the classification attempted in this act. A classification, however, based alone on whether the show is exhibited here or there, and without any relation to public health, morals, or the general welfare, is arbitrary and entirely aside from public interest or concern.

The judicial history of this state is replete with instances where the courts have nullified acts of the Legislature because of attempted arbitrary classifications in tax and police measures. A few cases in point will be cited.

An act of the Legislature levying an occupation tax on sleeping cars operated over the railway of another and exempting from the operation of the law those who operated cars over their own railroads was not equal and uniform within the meaning of the Constitution, as held in Pullman Co. v. State, 64 Tex. 274, 53 Am. Rep. 758.

An act levying an occupation tax on peddlers and exempting from the payment of the tax all persons who are blind, deaf, dumb, wounded and incapacitated ex-soldiers, was held unconstitutional and void in Ex parte Jones, 38 Tex. Cr. R. 482, 43 S. W. 513.

An act of the Legislature that imposed an occupation tax on cotton buyers, but exempted from the payment of the tax all cotton buyers who, as merchants, paid an occupation tax as such, was held void because of its inequality and want of uniformity. Rainey v. State, 41 Tex. Cr. R. 254, 53 S. W. 882, 96 Am. St. Rep. 786; Poteet v. State, 41 Tex. Cr. R. 268, 53 S. W. 869; Ex parte Overstreet, 39 Tex. Cr. R. 474, 46 S. W. 825; Hoefling v. City of San Antonio, 85 Tex. 228, 20 S. W. 85, 16 L. R. A. 608.

In disposing of the case of Pullman v. State, supra, the court, among other things, said:

"If the things done constitute in one person or corporation the taxed occupation, no one doing the same thing can be omitted from the class taxed, without a violation of the constitutional provision; even though the omitted or excepted person or corporation may do more or other things than are necessary to constitute the taxed occupation, and though that done in excess may, within itself, constitute a distinct occupation subject to taxation, however kindred in nature the occupations may be.

"The Legislature may classify subjects of taxation, and these classifications may, as they will, be more or less arbitrary; but when the classification is made all must be subjected to the payment of the tax imposed, who, by the existence of the facts on which the classification is based, fall within it." 64 Tex. 274.

The case of Hoefling v. San Antonio, supra, is on all fours with the case under consideration, in that the classification involved in the city ordinance under review in the Hoefling Case was based on the "place" where certain sales were made; in the statute called in question here the classification is based on the "place" where shows exhibit.

San Antonio levied on butchers an annu-

al license tax of $75 per stall where meat. etc., were vended, but collected the tax only from butchers who sold meat at private stalls, and not from butchers renting stalls in the city market house. This ordinance, as actually administered, was attacked as being unconstitutional and void because of its inequality. The Supreme Court sustained this contention, and among other used the following language:

"If, however, the ordinance applies, and was intended to apply, only to those who might vend meats in stalls established on their own premises, which is probably what was intended, then the ordinance and tax collected under it were illegal, because in direct conflict with the Constitution, which would require the taxing of all persons in the city who pursued the same occupation, without reference to the place where the business was conducted, or would otherwise deny the right to tax any. person engaged in that business."

The decisions of our courts in these Texas cases holding different acts of the Legislature and ordinances of cities void because violative of the Constitution fully justify the conclusion reached by us in this case.

[8] The last question for our consideration is: What, if any, effect does the nullification of sections 1 and 2 of this act have on the remainder? Does the entire act fall because a portion is invalid, or is the valid portion severable from and independent of the invalid portion? It is a fundamental rule of constitutional construction that, although one portion of an act may be unconstitutional, if the invalid portion is severable from and independent of the valid portion, the invalid is to be stricken out and the valid is permitted to stand. This rule is especially applicable in all cases where the statute, as in the case at bar, provides for two distinct subjects. 6 R. C. L. 121–125.

[9] Applying this rule to this case, we find that the act of the Legislature in question provides for two entirely distinct and severable subjects of taxation. In sections 1 and 2, that portion of the act held unconstitutional, the act provides a scheme complete within itself for the collection of a daily tax from every theatrical or dramatic representation and from every musical comedy show and from all similar amusements for which pay for admission is demanded or received, and that travel from place to place and give exhibitions, etc. In sections 3 and 4, the valid portions of the act, the Legislature has provided a scheme complete within itself for the collection of an annual occupation tax from the owner, proprietor or operator of every regularly established and recognized opera house, theater, air dome, and other established places where moving pictures or other entertainment or exhibitions are' given for private profit, etc. This act falls strictly within and is ruled by the doctrine announced above. We therefore conclude that, after eliminating sections 1 and 2, the remainder of the act; being on a distinct subject and in no sense dependent for its enforcement upon any provision of the invalid portion of the act, must stand.

In harmony .with these views, the judgment of the court below is reversed, and is here rendered in favor of appellants.

Reversed and rendered.