## NORTH FORT WORTH AMUSEMENT CO. et al. v. CARD, Tax Collector, et al.
### (No. 12331.)

Court of Civil Appeals of Texas. Fort Worth.
Jan. 4, 1930.

Carl W. Wade, of Fort Worth, for appellants.

R. A. Stuart, F. A. Ogilvie, Callaway & Wade, Cecil A. Morgan, and Kemble & Floyd, all of Fort Worth, for appellees.

BUCK, J. This is a suit by the North Fort Worth Amusement Company, the Liberty Amusement Company, the Queen Amusement Company, the Odeon Amusement Company, and other theaters and the owners of other theaters to enjoin L. P. Card, tax collector of Tarrant County, and W. T. Macy, the tax collector of the city of Fort Worth, from attempting to collect and from collecting the state and city tax fixed by article 7047, subd. 22, of the Revised Civil Statutes of 1925. This article, passed by the Thirty-Third Legislature 1923, is as follows:

"Theaters.—From the owner, proprietor or operator of every regularly established and recognized opera house, theater, airdome, and other established place where moving picture or other entertainments or exhibitions are given for private profit, in cities, towns and villages having the following populations, respectively:

| Population. | Annual Tax. |
|---|---|
| Under 1,000 | $ 5.00 |
| 1,000 to 2,500 | 15.00 |
| 2,500 to 5,000 | 20.00 |
| 5,000 to 10,000 | 25.00 |
| 10,000 to 15,000 | 30.00 |
| 15,000 to 20,000 | 40.00 |
| 20,000 to 30,000 | 50.00 |
| 30,000 to 40,000 | 60.00 |
| 40,000 or more | 75.00 |

"In each case the population shall be determined by the preceding Federal census. Counties, incorporated cities, towns and villages shall each have the power and authority to collect one-half the amount of such State occupation tax."

▇▇ Plaintiffs pleaded that the theaters mentioned were small theaters, some of them located in the suburban districts of the city of Fort Worth; that they had seating capacities not to exceed for 500 persons; that they were not allowed to show the "first-run" pictures, but only had the privilege of showing such pictures after they had been shown in the larger theaters such as the Worth, the Majestic, and the Palace theaters in the city of Fort Worth; that such theaters charged only 20 cents admission, while these other three theaters charged 60 cents admission; that the attempted classification by the Leg-

islature based on the place where the theaters were conducted is not such a classification as would make a tax placed thereon equal and uniform. In support of their contention, they cite such authorities as Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 15 L. R. A. (N. S.) 195, 129 Am. St. Rep. 238, by the Kentucky Supreme Court, and Gila Meat Co. v. State, 276 P. 1, by the Supreme Court of Arizona. In the last-cited case, the court held that the Supreme Court decision in Toyota v. Hawaii, 226 U. S. 184, 33 S. Ct. 47, 48, 57 L. Ed. 180, was in point, and that the court had the highest regard for decisions of the Supreme Court, but did not agree with the conclusions reached by it. This case also cites the case of Hager v. Walker, supra, which agrees with the conclusions reached by the Supreme Court of Arizona. In the case of Davis et al. v. White, 260 S. W. 138, 139, opinion by Justice Looney of the Dallas Court of Civil Appeals, writ of error refused by the Supreme Court, the court had under consideration the constitutionality of this entire article. They sustained the attack on subdivisions 1 and 2, article 7047, but upheld the balance of the article, including the section herein involved. The court said:

"In considering the constitutionality of a statute, it is but a decent respect due to the wisdom, integrity, and patriotism of a co-ordinate branch of the state government, by which the law is passed, to presume in favor of its validity until its violation of the Constitution is shown beyond a reasonable doubt. We have not considered the propositions that the law is unwise, unjust, or that it was probably enacted in response to the activities of private interests. The courts are not charged with the duty of correcting every abuse arising from the exercise by the Legislature of its conceded authority; to do so would be to obliterate all distinction existing between the different departments of the state government. If the act in question is unwise, unjust, or mischievous in its tendencies, relief must be obtained from the Legislature. Courts will not, for mere considerations of reason, wisdom, or questionable motives on the part of members of the Legislature, invade its realm and undo its work. This we understand to be a time-honored rule of conduct, or the attitude of mind, rather, in which a court considers the validity of a statute under an attack against its constitutionality."

In Texas Company v. Stephens, 100 Tex. 640, 641, 103 S. W. 481, 485, Justice Williams of the Supreme Court said:

"The considerations upon which such classifications shall be based are primarily within the discretion of the Legislature. The courts, under the provisions relied on, can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the business-

es classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. This is the rule in applying both the state and federal Constitutions, and it has been so often stated as to render unnecessary further discussion of it."

An act levying an occupation tax on peddlers, and exempting from the payment of the tax all persons who are blind, deaf, dumb, wounded and incapacitated ex-soldiers, was held unconstitutional and void in Ex parte Jones, 38 Tex. Cr. R. 482, 43 S. W. 513. An act of the Legislature that imposed an occupation tax on cotton buyers, but exempted from the payment of the tax all cotton buyers, who, as merchants, paid an occupation tax as such, was held void because of its inequality and want of uniformity. Rainey v. State, 41 Tex. Cr. R. 254, 53 S. W. 882, 96 Am. St. Rep. 786; Poteet v. State, 41 Tex. Cr. R. 268, 53 S. W. 869; Ex parte Overstreet, 39 Tex. Cr. R. 474, 46 S. W. 825; Hoefling v. City of San Antonio, 85 Tex. 228, 20 S. W. 85, 16 L. R. A. 608.

In Pullman Co. v. State, 64 Tex. 274, 53 Am. Rep. 758, the Supreme Court said:

"If the things done constitute in one person or corporation the taxed occupation, no one doing the same things can be omitted from the class taxed, without a violation of the constitutional provision; even though the omitted or excepted person or corporation may do more or other things than are necessary to constitute the taxed occupation, and though that done in excess may, within itself, constitute a distinct occupation subject to taxation, however kindred in nature the occupations may be.

"The Legislature may classify subjects of taxation, and these classifications may, as they will, be more or less arbitrary; but when the classification is made all must be subjected to the payment of the tax imposed, who, by the existence of the facts on which the classification is based, fall within it."

In the case of Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556, 561, on certified questions, the Supreme Court, speaking through Chief Justice Phillips, said:

"In the enactment of such a law the Legislature was privileged to make a classification in respect to employees subject to the law. Classification for the purpose of a law is a legislative function. It will be sustained by the courts unless it is wholly without any reasonable basis."

In Blessing v. City of Galveston, 42 Tex. 641, local citation 660, it is said:

"Equality and uniformity of taxes on occupations, to the approximate extent of which it is reasonably attainable, is required by the Constitution, and is an essential element in the power of taxation. But discrimination

in occupations and classifications of them, so far as it has been made to appear to us, seems to be a reasonable and proper rule applied by the Legislature for the purpose of apportioning such taxes with equality and uniformity. Until it is shown that the Legislature has clearly exceeded the limit of their authority and disregarded the restrictions by which it should be controlled, evidently the court cannot interfere."

In Dallas Gas Co. v. State, 261 S. W. 1063, 1067, opinion by Associate Justice Baugh, of the Austin Court of Civil Appeals, it is said:

"Classification for the purpose of a law is a legislative function. It will be sustained by the courts unless it is wholly without any reasonable basis."

In Toyota v. Territory of Hawaii, supra, the Supreme Court of the United States, speaking through Justice Hughes, said:

"The remaining contention, urged in various forms by the assignments of error, comes to the single point that the statute created an arbitrary classification. It cannot be said, however, that there was no reasonable basis for a distinction between Honolulu and other districts. [This was an attack on a taxing enactment which provided that auctioneers in Honolulu should pay $600, while auctioneers in other districts were required to pay only $25.] And it was the province of the Legislature to decide upon the amount of the fees which should be charged. It must be assumed that in so deciding it took into account varying conditions in the respective localities; as, for example, in the amount of business transacted and in the corresponding value of such licenses. Necessarily, as was said in Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283, 294, 42 L. Ed. 1037, 1043, 18 S. Ct. 594, the power of classification 'must have a wide range of discretion.' It is not reviewable 'unless palpably arbitrary.' Orient Ins. Co. v. Daggs, 172 U. S. 557, 562, 43 L. Ed. 552, 554, 19 S. Ct. 281; Louisville & N. R. Co. v. Melton, 218 U. S. 36, 52-55, 54 L. Ed. 921, 927-929, 30 S. Ct. 676 [47 L. R. A. (N. S.) 84]," and other cases cited.

In the case of Brooks v. State, 58 S. W. 1032, 1034, writ of error denied, opinion by Justice Bookhout of the Dallas Court of Civil Appeals, it is said:

"It is clear that the law upon its face is not subject to the objection that it is not equal and uniform. But it is contended that because the law cannot be enforced against national banks it is not equal and uniform in its results. The constitution provides that the tax shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax. It is not within the limits of the authority of the state to levy an occupation tax upon national banks. The fact that the state has no authority to enforce the law against national banks does not make it void for the want of uniformity. * * * We think we are safe in saying that the fourteenth amendment was not intended to compel the state to adopt an iron rule of equal taxation. The courts of this state hold that occupation taxes are equal and uniform when the same amount is exacted alike from all persons of the same class, trade, calling, or profession."

We conclude that any relief to which the appellants are entitled must come from the Legislature, and not from the courts.

The judgment of the trial court in sustaining a general demurrer to plaintiffs' petition is affirmed.