## Ex Parte M. Mehlman.

No. 16923.   Delivered June 13, 1934.
Rehearing Denied November 7, 1934.
Reported in 75 S. W. (2d) 689.

The opinion states the case.

*R. B. Humphrey,* of Dalas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—Chapter 29 of the General and Special Laws passed by the 43rd Legislature at the First Called Session, among other things, provides that no person shall engage in the business of retail dealer in either fresh or frozen edible aquatic products without procuring a license from the Game, Fish and Oyster Commission; that the licensee shall pay an annual tax of three dollars in any city or town of less than five thousand population, ten dollars in any city or town of not less than five thousand and not more than forty thousand population, and twenty dollars in any city or town of more than forty thousand population; and that failure to pay the tax and procure the required license shall constitute a misdemeanor for which the person offending may be punished by a fine of not less than ten nor more than two hundred dollars. Also the act provides that no person shall engage in the business of wholesale dealer of fish, oysters, shrimp or other commercial edible aquatic products without paying an annual tax of two hundred dollars and procuring a license from the Game, Fish and Oyster Commission; and that failure to pay the tax and procure the license shall constitute a misdemeanor punishable as in the case of a retail dealer. The pertinent definitions set forth in the act are as follows:

"A 'Wholesale Fish Dealer' is any person engaged in the business of buying for the purpose of selling, canning, preserving or processing, or buying for the purpose of handling for shipments or sale, fish or oysters or shrimp or other commercial edible aquatic products, to Retail Fish Dealers, and/or to Hotels, Restaurants or Cafes and to the Consumer."

"A 'Retail Fish Dealer' is any person engaged in the business of buying for the purpose of selling either fresh or frozen edible aquatic products to the consumer."

Relator was engaged in the business of retail dealer in fish in the City of Dallas, the population of which exceeds forty thousand, without paying the required tax of twenty dollars and procuring a license. Upon being arrested under a complaint charging him with engaging in the business of retail dealer without procuring the required license, relator applied to the Judge of the County Criminal Court of Dallas County for a writ of habeas corpus. Upon the writ being awarded, a hearing was had and relator remanded to the custody of the proper officer. The case is here on appeal from the order mentioned.

The contention is made that the act is invalid, in that it is so indefinitely framed that it cannot be ascertained from the

definitions of dealers what sort of license a particular dealer must have or what amount he must pay as a license fee. See section 10, article 1, Constitution of Texas, and article 6, Penal Code. It is observed that one who sells to the consumer is a retail dealer. The word "consumer," not being defined in the act, must be taken and construed in the sense in which it is understood in common language. Article 8, Penal Code. Webster's International Dictionary defines a "consumer" as: "One who uses (economic) goods and so diminishes or destroys their utilities;—opposed to producer." The same authority defines the word "consume" to mean, "use up, expend, waste, devour," and gives as synonyms the following: "Destroy, swallow up, engulf, absorb, waste, exhaust, spend, expend, squander, lavish, dissipate, burn up." In State v. Lagomarcino-Grupe Co., 223 N. W., 512, the Supreme Court of Iowa, in construing the word "consumer" as employed in a statute levying a tax on cigarettes, used language as follows: "The word 'consume' has a general and popular meaning which is consistent with the dictionary definition and which it must be assumed was in the mind of the Legislature at the time of the enactment of the statute in question."

It is clear from a reading of the definitions of dealers that one who confines his business to selling to the consumer is required to pay the tax provided for retail dealers, and that the amount of such tax is determined by the population of the city or town in which the occupation is pursued. It is true that the wholesale dealer is permitted to sell to the consumer. However, when he has paid the tax required of wholesale dealers he is authorized to extend his operations. For example, in addition to selling to the consumer, he may buy for the purpose of canning and may buy for the purpose of selling to retail dealers. For the privilege of extending his operations beyond those of the retail dealer, he pays a higher tax. It is argued, however, that the wholesale dealer is permitted to sell to hotels, restaurants, and cafes, all of which are properly comprehended by the term "consumer" as employed in the definition of retail dealer, and that therefore, the dealer who desires to sell to hotels, etc., is unable to determine the sort of license he must secure. We perceive nothing in the definition of retail dealer that should be taken to prohibit one operating under a retail dealer's license from selling to hotels, restaurants and cafes, they being comprehended by the term "consumer" as that term is ordinarily understood. We, therefore, express the opinion that one desiring to sell to the consumer alone is apprised by

the act that he is required to procure a retail dealer's license, and that thereunder he may sell to hotels, restaurants and cafes. We are constrained to hold that the definition of retail dealer is sufficient to meet the legal demand that provisions of the penal law must be intelligible.

It is urged that the act is unconstitutional, in that it is provided therein that the money derived from levying the tax shall be appropriated exclusively to the use and benefit of the Game, Fish and Oyster Commission. It is pointed out that section 3, art. 7, of the Constitution provides that one-fourth of the revenue derived from State occupation taxes shall be set apart for the benefit of the public free schools. It is unnecessary to decide whether the act is a regulatory measure under the police power, or a revenue measure. If that part of the act relating to the appropriation of the receipts should be held invalid,— and we disclaim any intention of so holding,—the remainder of the act would not be affected. We quote section 9: "If any paragraph, section or any part of this Act shall be held unconstitutional or inoperative, it shall not affect any other paragraph, section or part of this Act; and the remainder of this Act, except the part declared unconstitutional or inoperative shall continue to be in full force and effect."

It is insisted by relator that the act is a revenue measure controlled by the provisions of sections 1 and 2 of art. 8 of our Constitution, and that said act violates that part of said section 2 requiring that "all occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax." We reiterate that it is unnecessary to decide whether the tax is a regulatory measure under the police power, or a revenue measure. In either event the Legislature is prohibited from making an arbitrary or unjustifiable classification. Davis et al v. White, County Tax Collector, et al, 260 S. W., 138. If it should be conceded that the act is a revenue measure, we are unable to discern wherein the classification adopted by the Legislature is violative of the Constitutional provision to which reference has been made. Dealers are divided into wholesalers and retailers. The tax exacted of retailers ranges from three dollars to twenty dollars, being graduated according to the population of the city or town in which the dealer pursues his occupation. Touching the power of the Legislature to classify the subjects of occupation taxes, we quote the language of Associate Justice Williams in The Texas Company v. Stephens et al, 100 Texas, 628: "The very language of the Constitution of the State implies power in the

Legislature to classify the subjects of occupation taxes and only requires that the tax shall be equal and uniform upon the same class. Persons who, in the most general sense, may be regarded as pursuing the same occupation, as, for instance, merchants, may thus be divided into classes, and the classes may be taxed in different amounts and according to different standards. Merchants may be divided into wholesalers and retailers, and, if there be reasonable grounds, these may be further divided according to the particular classes of business in which they may engage. The considerations upon which such classifications shall be based are primarily within the discretion of the Legislature. The courts, under the provisions relied on, can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the businesses classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. This is the rule in applying both the State and Federal Constitutions, and it has been so often stated as to render unnecessary further discussion of it."

It is our duty to uphold the act unless it is clearly in violation of the State or Federal Constitution. Dallas Gas Company v. State, 261 S. W., 1063. Classifications of occupations for the purposes of taxation have been considered by the courts on many occasions. Numerous cases might be cited in which in different cities or localities a given occupation or business has been subjected to different rates of license taxation on the basis of difference in population or conditions. By the great weight of authority, such classification is upheld unless it is made arbitrarily and is not based on a rational difference of situation or conditions found in the different cities or localities. We quote from 37 Corpus Juris, page 205, as follows: "In different cities or localities a given occupation or business may be subject to different rates of license taxation on the basis of difference in population or conditions, without violating the constitutional provisions relating to uniformity or equal protection of the laws, unless such classification is made arbitrarily and is not based upon a rational difference of situation or conditions found in the different cities or localities, and this latter rule is particularly applicable where the license fee is imposed mainly for the purpose of revenue, so that it may be regarded as a pure tax in the constitutional sense."

In this, and in other jurisdictions having constitutional provisions similar to our own, classifications resting upon the basis

of difference in population have been sustained.   See Texas
Banking and Insurance Company v. State, 42 Texas, 640; Davis
v. White, 260 S. W., 138; Dallas Gas Company v. State, 261
S. W., 1063; North Fort Worth Amusement Company v. Card,
23 S. W. (2d) 778; Winslett v. Case-Fowler Lumber Company
(Supreme Court of Georgia), 160 S. E., 384; State v. Shapiro
(Court of Appeals of Maryland), 101 Atl., 703; Brooks v. Har-
rison (Supreme Court of Georgia), 156 S. E., 35; Toyota v.
Hawaii, 226 U. S., 184, 33 S. Ct., 47, 48, 57 L. ed., 180.   In the
early case of Texas Banking and Insurance Company v. State,
supra, the Supreme Court of this State considered and upheld
chapter 52, sec. 6 of the Acts of 1871, providing that every
person or firm dealing in stocks or bills of exchange in any city
or town exceeding 5,000 in population should pay an annual
occupation tax of $250, and an annual tax of $50 in any city or
town of less than 5,000 population.   In the cases of Davis v.
White, supra, and North Fort Worth Amusement Company v.
Card, supra, the occupation tax levied against picture shows in
this State as set forth by article 747, subd. 22, of the Revised
Civil Statutes of 1925, was considered and sustained.   A read-
ing of the statute last mentioned reveals that the tax is deter-
mined by the population of the city, town or village in which
the show is operated.   For example, the tax in towns having a
population of under 1,000 is $5; and $75 in towns of 40,000 or
more.   Between the limits mentioned the tax is graduated ac-
cording to population.   In the case of Toyota v. Hawaii, supra,
a tax enactment providing that auctioneers in Honolulu should
pay $600, while auctioneers in other districts were required to
pay only $25, was considered by the Supreme Court of the
United States, and upheld.   In the course of the opinion, Justice
Hughes used language as follows: "The remaining contention,
urged in various forms by the assignments of error, comes to
the single point that the statute created an arbitrary classifi-
cation.   It cannot be said, however, that there was no reason-
able basis for a distinction between Honolulu and other districts.
And it was the province of the Legislature to decide upon the
amounts of the fees which should be charged.   It must be as-
sumed that in so deciding it took into account varying condi-
tions in the respective localities; as, for example, in the amount
of business transacted and in the corresponding value of such
licenses.   Necessarily, as was said in Magoun v. Illinois Trust
& Sav. Bank, 170 U. S., 283, 294, 42 L. ed., 1037, 1043, 18 S.
Ct., 594, the power of classification 'must have a wide range of
discretion.'   It is not reviewable 'unless palpably arbitrary.' "

Relator argues that, under the terms of the act, a retailer not living in a town may buy and sell fish without paying the tax and procuring a license. He contends the alleged exemption invalidates the act. It would appear to be improbable that a dealer in fish would carry on his occupation in a place where there was no collection of inhabited houses. Such a dealer would be so rare as that it might be said that he would be in a class by himself. In the case of Ex parte Reineger, (Supreme Court of California), 193 Pac., 81, the contention was made that the act there in question was invalid in that conditions might arise in which certain wholesalers would be exempt. Answering this contention, the court said: "The possibility does not appear so great as to require us to annul the section for fear that there may be an unjust discrimination in his favor if it is held valid. In view of the presumption in favor of legislative action we must assume that the Legislature, upon a survey of the field, concluded that there were no dealers carrying on business in that manner, and that it was improbable that there ever would be, and so purposely omitted any provision for such cases."

It is shown in the statement of facts before us that in the City of Dallas there are systems of chain stores. For example, the owner of one system operates a number of places of business in the city. He pays one annual tax for a license to retail fish, and carries on the business in each of his several stores. The facts further show that relator owns one place of business. Upon this situation the contention is predicated that the act is discriminatory. Relator is not inhibited by the act from operating as many stores in the City of Dallas as he desires under a single retail fish dealer's license. As far as the law is concerned, every retail dealer within a given city is accorded equal privileges. It is true that the owner of a system of chain stores in a city might do a greater volume of business than the owner of a single store. However, this might obtain as between two proprietors each owning a single store.

Relator construes the act to permit a retail dealer securing a license for a given town to operate generally (under said license) in any other town or towns without paying further tax. We are unable to reach the conclusion that the act is susceptible of the interpretation relator places upon it. We think the retail dealer who pursues his occupation in a town of less than 5,000 is required to pay a tax of $3 and to procure the necessary license for that town. In the event he extends his operations to another town of the same size he must again pay

a tax of $3 and secure a license. If he desires to pursue his occupation in a town of not less than 5,000 and not more than 40,000, a tax of $10 must be paid, notwithstanding he is also operating in a town of under 5,000 under a license applicable to that town. In short, he is confined to the town for which he secures his license, and if he pursues the occupation of retail dealer in another town he must pay another tax, which is to be determined by the population of the town into which he has extended his operations.

A careful consideration of all of relator's contentions leads us to the conclusion that there is no well-founded constitutional objection to the act, viewing it from the standpoint of either the Federal or State Constitutions.

The judgment remanding relator is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The relator's motion for rehearing has been examined. On the original hearing we gave the subject the most thorough examination of which we are capable, and the conclusion stated is regarded as sound.

The case of Liggett Co. v. Lee, 288 U. S., 517, 77 L. ed., 929, to which relator refers, in so far as it touches the issues involved in the present case, is regarded as supporting the conclusion reached upon the original hearing.

The motion for rehearing is overruled.

*Overruled.*