**Appellant's En Banc Rehearing Denied; Majority Opinion and Concurring and Dissenting Opinion of December 5, 2013, Withdrawn; Affirmed and Substitute Majority Opinion and Substitute Concurring and Dissenting Opinion filed March 6, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00378-CR

---

## ORLANDO SALINAS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1313253**

---

## S U B S T I T U T E   M A J O R I T Y   O P I N I O N

Appellant Orlando Salinas's motion for rehearing is overruled; the majority opinion of December 5, 2013 is withdrawn; and the following substitute majority opinion is issued in its place.

Orlando Salinas appeals from his conviction for injury to an elderly person.

A jury found him guilty and the trial court sentenced him to five years in prison. Appellant contends that the trial court erred by (1) permitting expert testimony on victim recantation; (2) admitting hearsay testimony under the excited utterance exception; and (3) assessing an unconstitutional court cost against him. *See* Tex. Loc. Gov't Code § 133.102(a)(1) (Vernon Supp. 2013). We reject appellant's contentions and affirm the trial court's judgment.

## BACKGROUND

Appellant was charged with assaulting his 80-year old father, Salvador Salinas. Several witnesses at trial described the assault, including complainant's grandson, Salvador Salinas III, and two of the grandson's friends, Omar Morales and Sean Finch.

The altercation occurred at the complainant's house, where appellant was staying. Appellant and the complainant argued; according to witnesses, appellant shoved the complainant to the floor and got on top of him. Appellant also shoved the complainant against a wall. After the physical confrontation, the complainant was bleeding from a wound on his arm. Several witnesses said the wound looked like a bite mark. The complainant's other son, Salvador Salinas, Jr., arrived at the home during the dispute and called 9-1-1.

Houston Police Officer Christopher Castellani testified that he arrived on the scene about six minutes after Salinas, Jr. called 9-1-1. Castellani described the complainant as being "visibly shocked," "dazed," "very upset," and "very sad." Castellani observed that the complainant was bleeding from lacerations on his arm and called for EMS to treat the wound.

Castellani testified that the complainant initially did not want to speak about what happened. As the conversation progressed, the complainant explained that he

2

had argued with appellant and received the wounds on his arm when appellant bit him twice. According to Castellani, the complainant stated that appellant hit him. Officer Chris Palla, who also arrived on scene soon after the 9-1-1 call, testified that the complainant claimed appellant had "jumped on him." The trial court overruled hearsay objections to both officers' testimony.

At trial, the complainant testified that appellant did not hit or bite him during the argument. The complainant denied telling Officer Castellani that appellant had assaulted him.

The State thereafter called an employee of the Harris County District Attorney's Office, Kapriva Johnson Hutchinson, as an expert regarding family violence. Hutchinson, a caseworker in the Family Criminal Law Division, testified that she had both a bachelor's and a master's degree in social work and had attended numerous "conferences, trainings and seminars where domestic violence was the [main] topic." She has attended seminars relating to minimization and recantation by domestic abuse victims and reviewed literature on those topics. Hutchinson detailed her experience working with domestic violence victims and her familiarity with their tendency to minimize or recant abuse allegations. Appellant objected to this testimony on relevance grounds, and on grounds that Hutchinson lacked the necessary qualifications to testify. The trial court overruled these objections and permitted Hutchinson to opine that it was common for domestic abuse victims to recant or minimize allegations.

The charge permitted the jury to find appellant guilty of causing injury to an elderly person if it determined appellant bit the complainant or struck him with a hand. After the jury found appellant guilty, the trial court sentenced him to five years in prison.

The trial court assessed court costs against appellant. In the certified bill of

3

costs, $133 was assessed against appellant as a "consolidated court cost." Appellant complained to the trial court regarding these costs in a motion for new trial, motion in arrest of judgment, and a hearing on the motions. The trial court overruled these objections.

ANALYSIS

## I.     Expert Testimony

Appellant contends that the trial court erred by permitting Hutchinson to testify as an expert because she was not shown to be qualified and her testimony was not relevant. The parties examined Hutchinson extensively on voir dire regarding her qualifications. Her testimony before the jury was relatively brief; it consisted almost entirely of a statement of her qualifications, and her opinion that domestic abuse victims frequently recant or minimize their accusations. She did not offer an opinion specifically regarding the complainant's testimony or any other facts of this case.

We review the admission of expert testimony under an abuse of discretion standard. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). A court abuses its discretion if it acts without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). The trial court is given a "limited right to be wrong" as long as it does not act in an arbitrary or capricious manner. *Id*. We will not reverse unless we determine that the trial court's ruling was so wrong as to fall outside the zone within which reasonable people might disagree. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

Texas Rule of Evidence 702 allows a witness qualified by knowledge, skill, experience, training, or education to testify on scientific, technical, or other

4

specialized subjects if the testimony would assist the trier of fact in understanding or determining a fact issue. Before admitting expert testimony under Rule 702, the trial court must be satisfied that (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010), *cert. denied*, 132 S. Ct. 128 (2011). These requirements are commonly referred to as qualifications, reliability, and relevance. *Id.* (citing *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006)). Each requirement raises distinct questions and issues, and an objection based on one requirement does not preserve error as to another. *Shaw v. State*, 329 S.W.3d 645, 655–56 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Appellant first challenges Hutchinson's qualifications because she had only "one frame of reference" and "one type of training and belief" after working for 12 years in the district attorney's office. Appellant cites no authority suggesting that a witness must work with more than one employer to qualify as an expert. In any event, Hutchinson stated that she has worked in internships in a group home, a hospital, and another health care facility. She testified that she has two degrees in social work and has attended numerous "conferences, trainings and seminars where domestic violence was the [main] topic," along with seminars relating to minimization and recantation by domestic abuse victims. She also has reviewed literature on these topics.

The record gives no indication that Hutchinson's education, training, and experience were too limited or "one-sided" to prevent her from qualifying as an expert. Hutchinson detailed her experience working with victims of domestic violence and dealing with their tendency to minimize or recant allegations of

abuse. On this record, the trial court acted within its discretion in determining that Hutchinson was qualified to testify as an expert. *See Duckett v. State*, 797 S.W.2d 906, 917, 920 (Tex. Crim. App. 1990) (social worker was qualified to testify as an expert regarding why victim of sexual abuse changed her testimony and appeared confused), *disapproved on other grounds by Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993).

Appellant additionally complains that Hutchinson "could not remember any classes or seminars or even books she had read about the subject." This appears to be a misreading of the record. Hutchinson testified that she has attended seminars and reviewed research articles on recantation; she was not asked to name any specific classes, seminars, or books.

Appellant makes no specific arguments on appeal challenging the relevance of Hutchinson's testimony. Hutchinson testified that it is common for domestic abuse victims to recant or minimize allegations of abuse. Other evidence suggested that the complainant in this case had made allegations against appellant, but complainant denied at trial that appellant had assaulted him. The trial court did not err in determining that Hutchinson's testimony was relevant to understanding why the complainant may have changed his account of the incident that led to appellant's prosecution. *See Duckett*, 797 S.W.2d at 920 (social worker's testimony regarding reasons for sexual abuse victim's changed testimony was relevant); *Fielder v. State*, 756 S.W.2d 309, 319 (Tex. Crim. App. 1988) (psychologist's testimony regarding reasons for remaining in an abusive marriage was relevant); *Scugoza v. State*, 949 S.W.2d 360, 363 (Tex. App.—San Antonio 1997, no pet.) (testimony on recantation from program director of battered women's shelter was relevant).

## II.     Hearsay Statements

Appellant contends that the trial court erred in permitting Castellani to testify regarding the complainant's statements made shortly after the alleged assault occurred.  Appellant raised several hearsay objections to this testimony; it appears that the trial court overruled these objections under the excited utterance exception.  *See* Tex. R. Evid. 801, 802, and 803(2).

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion.  *Tillman*, 354 S.W.3d at 435.  A trial court abuses its discretion only if its decision "lies outside the zone of reasonable disagreement."  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

In determining whether a statement falls within the excited utterance exception, a court must assess whether (1) the statement was the product of a startling event that produced a state of nervous excitement; (2) the declarant was dominated by the excitement of the event; and (3) the statement related to the circumstances of the startling event.  *Jackson v. State*, 110 S.W.3d 626, 633 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).  The court also may consider other factors such as the amount of time elapsed and whether the statement was a response to a question.  *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001).  The most important consideration is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event when the statements were made.  *King v. State*, 953 S.W.2d 266, 269 (Tex. Crim. App. 1997).

In support of his contention that complainant's out-of-court statements were inadmissible, appellant emphasizes that these statements were prompted by Castellani's questioning; complainant was sitting calmly in a chair when the statements were made; complainant already had spoken to other officers and was

slow to "open up" to Castellani; complainant stated that he did not remember much about the altercation; and the statements were clear and chronological.

While these factors arguably weigh against admission, other circumstances support application of the excited utterance exception in this case.

Castellani testified that he arrived on the scene within six minutes of the 9-1-1 call; although it is not clear how much time elapsed before Castellani spoke to complainant, the trial court reasonably could have concluded that no significant amount of time elapsed between Castellani's arrival and his conversation with complainant. Castellani described the complainant as being "visibly shocked," "dazed," "very upset," and "very sad." Castellani also observed that complainant was bleeding from lacerations on his arm. These factors put this case well within the range of circumstances justifying application of the excited utterance exception. *See, e.g., Vinson v. State*, 221 S.W.3d 256, 260-61 (Tex. App.—Houston [1st Dist.] 2006) (exception applied because complainant was visibly shaken and injured after attack), *rev'd on other grounds*, 252 S.W.3d 336 (Tex. Crim. App. 2008); *Hudson v. State*, 179 S.W.3d 731, 737 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (exception applied because complainant was "visibly shaken and highly upset when [officers] arrived within five minutes of receiving assault call").

Accordingly, the trial court acted within its discretion in overruling the hearsay objection.

## III. Consolidated Court Cost

Appellant contends that the trial court's assessment of a "consolidated court cost" against him violates the Texas Constitution.

The trial court assessed the cost pursuant to section 133.102(a)(1) of the

8

Texas Local Government Code, which mandates that a person convicted of a felony must pay $133 "as a court cost, in addition to all other costs." *See* Tex. Loc. Gov't Code § 133.102(a)(1). The collected amounts must be remitted to the state comptroller, who in turn must allocate this money to fourteen specified "accounts and funds:"

(1) abused children's counseling

(2) crime stoppers assistance

(3) breath alcohol testing

(4) Bill Blackwood Law Enforcement Management Institute

(5) law enforcement officers standards and education

(6) comprehensive rehabilitation

(7) operator's and chauffeur's license

(8) criminal justice planning

(9) an account in the state treasury to be used only for the establishment and operation of the Center for the Study and Prevention of Juvenile Crime and Delinquency at Prairie View A&M University

(10) compensation to victims of crime fund

(11) emergency radio infrastructure account

(12) judicial and court personnel training fund

(13) an account in the state treasury to be used for the establishment and operation of the Correctional Management Institute of Texas and Criminal Justice Center Account, and

(14) fair defense account.

*Id*. §§ 133.102(b), (e) (Vernon Supp. 2013). Subsection (e) provides that the

9

designated funds "may not receive less than" certain specified percentages of the collected amounts.  *Id.*  Section 133.058 permits a municipality or county to retain 10 percent of collected amounts as a "service fee."

Appellant maintains that section 133.102(a)(1) is facially unconstitutional under the separation of powers clause of the Texas Constitution:

> DIVISION OF POWERS; THREE SEPARATE DEPARTMENTS; EXERCISE OF POWER PROPERLY ATTACHED TO OTHER DEPARTMENTS.  The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Tex. Const. art. II, § 1.

According to appellant, the uses specified in section 133.102(e) for the court cost collected under section 133.102(a)(1) include uses that are not properly characterized as "costs of court;" therefore, appellant contends that section 133.102(a)(1) impermissibly requires the judicial branch to perform an executive function by collecting a tax.

Appellant argues that only two of the uses specified in section 133.102(e) "have a direct link to the function of criminal court system operations . . . ."  He says these two permissible uses are the "judicial and court personnel training fund" and the "fair defense account."  *See* Tex. Loc. Gov't Code § 133.102(e)(12), (14). Appellant says the remaining 12 uses specified in section 133.102(e) "are unrelated to the criminal court system."  He thus contends that the statute impermissibly compels courts to collect a "tax" in violation of separation of powers principles "[b]ecause the consolidated court cost is primarily used to fund non-court

10

programs."

Appellant raised this contention in the trial court in a motion for new trial, motion in arrest of judgment, and at a hearing on these motions. But the trial court did not rule on the motion in arrest of judgment; nor is it clear that either motion is an appropriate vehicle for making a complaint regarding court costs. *See Landers v. State*, 402 S.W.3d 252, 254-55 (Tex. Crim. App. 2013) (reserving question of whether a motion for new trial is an appropriate vehicle); *Crittendon v. State*, 923 S.W.3d 632, 634 (Tex. App.—Houston [1st Dist.] 1995, no pet.) ("A motion in arrest of judgment is essentially a post-trial motion to quash the indictment."); *see also Landers*, 402 S.W.3d at 256 (Keller, P.J., concurring) (discussing possible alternative method of challenging costs); *Thomas v. State*, No. 01-12-00487-CR, 2013 WL 1163980, at *2 (Tex. App.—Houston [1st Dist.] March 21, 2013, no pet.) (same). Under the circumstances of this case, however, we conclude that the substantive grounds appellant relies upon and the relief sought were brought to the trial court's attention timely and with adequate specificity. *See* Tex. R. App. P. 33.1(a)(1)(A). We therefore consider the substance of appellant's motions rather than their titles. *Ex parte Caldwell*, 58 S.W.3d 127, 130 (Tex. Crim. App. 2000).

As a threshold matter, we reject the State's contention that this issue is not ripe because the Texas Department of Criminal Justice has not attempted to collect the costs from appellant. The trial court assessed costs against appellant, and a bill of costs has issued. Appellant therefore owes the costs regardless of whether an attempt to collect has been made. *See* Tex. Code. Crim. Proc. 103.001 (Vernon 2006) (cost is not payable until a written bill is produced or is ready to be produced); *Johnson v. State*, 389 S.W.3d 513, 516 (Tex. App.—Houston [14th Dist.] 2012, pet. granted) (costs issue was ripe where trial court had ordered defendant to pay costs of a certain amount in the judgment). This is not an

11

abstract, hypothetical or contingent issue.

In addressing a constitutional challenge, this court "must begin with the presumption that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it." *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). The party challenging the statute "has the burden to establish its unconstitutionality." *Id*. "[T]o prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances." *Id*.

Appellant principally relies on *Ex parte Carson*, 143 Tex. Crim. 498, 159 S.W.2d 126, 127 (1942), to meet this burden. *Carson* invalidated a statute requiring the collection of $1 in costs in civil and criminal cases in certain counties to fund law libraries in those counties. *Id.* The Court of Criminal Appeals invalided the statute because (1) the $1 cost was "neither necessary nor incidental to the trial of a criminal case [and thus was] not a legitimate item to be so taxed" against a criminal defendant; (2) the statute was a local or special law, which the state legislature was not authorized to enact; and (3) collection of this cost only from defendants in certain counties was discriminatory. *Id*. at 127, 129-30.

There is room to discuss whether *Carson* can bear the weight appellant would have it carry. *Carson*'s passing discussion of whether the $1 fee constitutes a "tax" is both abbreviated and bereft of citations to supporting authority. The opinion's analysis focuses primarily on whether this fee, which was assessed only in certain counties, "is unconstitutional as being a local or special law passed in contravention of Section 56 of Article 3 of the Constitution of the State of Texas . . . ." *Id.*

In any event, appellant's facial constitutional challenge to section 133.102(a)(1) fails for at least two reasons.

12

The first reason is that appellant failed to satisfy his burden to show that the statute is invalid in all possible applications because he has not established what the funds designated in section 133.102(e) actually do. Appellant draws inferences from the titles of these funds, makes assumptions about the uses to which the fees are put, and invites us to do the same. We decline this invitation and refrain from assuming, based on fund titles alone, that all uses to which portions of the fees could be put are insufficiently related to the court system.

The second reason is that appellant fails to address severability principles when he argues that the consolidated court cost amounts to an impermissible "tax" because it is "primarily used to fund non-court programs."

It is useful in addressing severability to focus on the precise remedy appellant seeks from this court. Appellant is not seeking to prevent the distribution of court costs to particular funds that he deems to be insufficiently court-related, and to direct those sums instead to funds that he finds unobjectionable. Rather, appellant asks this court to foreclose collection of section 133.102(a)(1)'s $133 court cost in its entirety even though at least some of the designated uses for this sum are, by appellant's own admission, permissible.

Section 133.102 does not contain a severability provision. In this circumstance, the Code Construction Act provides as follows: "[I]f any provision of the statue or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable." Tex. Gov't Code Ann. § 311.032(c) (Vernon 2013); *see also Salas v. State*, 365 S.W.2d 174, 175 (Tex. Crim. App. 1963).

Appellant seeks to invalidate section 133.102(a)(1)'s court cost in its entirety

13

based on the identity of the recipient funds designated in section 133.102(e). He asked the trial court to reform the judgment ordering appellant to pay $304 in court costs, and to reduce that amount by $133 corresponding to the court cost mandated by section 133.102(a)(1). But appellant does not contend that all of the recipient funds designated in section 133.102(e) are impermissible. To the contrary, appellant concedes that directing a portion of the fee to the "judicial and court personnel training fund" and the "fair defense account" as specified in subsection 133.102(e) is permissible. He states: "Money used to train judges and court personnel serves to better prepare the government actors involved in the trial of criminal cases." He further states that a program for payment of court-appointed attorneys to represent indigent defendants in the trial of criminal cases "is necessary to the trial of a criminal case."

Even if it is assumed solely for argument's sake that at least some of the fund recipients identified in subsection 133.102(e) are invalid, appellant identifies no reason why section 133.102(a)(1)'s $133 court cost cannot be collected and distributed in accordance with severability principles to the admittedly appropriate funds specified in subsections 133.102(e)(12) and (14). This circumstance involving a single amount used for multiple purposes distinguishes this case from *Carson*, 159 S.W.2d at 127, which involved a single amount designated for a single impermissible purpose.

The specified percentages in section 133.102(e) set only a minimum or floor amount that must be distributed to particular funds.[1] Therefore, the statute as

---

[1] The dissent contends that subsection (e)'s "not . . . less than" language applies only to fees collected in connection with offenses committed before January 1, 2004. Nothing in subsection (e) expressly makes this language applicable only to pre-2004 offenses. Assuming the dissent's reading to be a plausible reading of a subsection that is, as the dissent observes, "not a model of

14

written can accommodate distribution of larger amounts to a smaller number of permissible recipients if other recipients are deemed to be impermissible. *See* Tex. Gov't Code Ann. § 311.032(c); *see also Road Dist. No. 4, Shelby Cnty. v. Allred*, 123 Tex. Crim. 77, 68 S.W.2d 164, 171 (Tex. 1934) (orig. proceeding) (provision of statute impermissibly donated state funds amounting to a "mere gratuity" to road district; invalidity of this provision's designated use of funds did not invalidate statute's other provisions allowing distribution of funds for permissible purposes because "the unconstitutionality of section 12 does not render the entire act void. It is a workable act with section 12 stricken."); *Ex Parte Mehlman*, 127 Tex. Crim. 257, 75 S.W.2d 689, 691 (Tex. Crim. App. 1934) ("If that part of the act relating to the appropriation of the receipts should be held invalid — and we disclaim any intention of so holding — the remainder of the act would not be affected.").

Because the admittedly valid uses are severable and are not foreclosed by other assertedly invalid uses to which the challenged court cost is put, appellant has not established that section 133.102(a)(1)'s $133 court cost always operates unconstitutionally as a tax or that it must be deleted in its entirety from the trial court's judgment.

---

statutory clarity," the appellant's constitutional challenge still fails under the longstanding precept that statutes susceptible to multiple constructions will be interpreted so as to render them constitutional. *See, e.g., Newsom v. State*, 372 S.W.2d 681, 683 (Tex. Crim. App. 1963). In keeping with this precept, it is appropriate to read subsection (e)'s "not . . . less than" language to apply to fees collected in connection with offenses committed on or after January 1, 2004.

## CONCLUSION

We overrule appellant's issues and affirm the trial court's judgment.

/s/    William J. Boyce
        Justice

Panel consists of Justices Boyce, Jamison, and Busby. (Jamison, J., concurring and dissenting).
Publish — Tex. R. App. P. 47.2(b).