## COLBERT MILL & FEED CO. v. OKLAHOMA TAX COMMISSION.

No. 29834.   Jan. 21, 1941.

*109 P. 2d 504.*

Chas. Hill Johns and Harold Thweatt (Miley, Hoffman, Williams, France & Johnson, of counsel), all of Oklahoma City, for plaintiff in error.

F. M. Dudley, A. L. Herr, and C. D. Stinchecum, for the Tax Commission, for defendant in error.

HURST, J.  The question for decision here is whether, under the Consumers and Users Tax Act of 1937, art. 10, ch. 66, S. L. 1937, 68 O.S.A. §§ 1249-1249w, sales of specially prepared or mixed feed fed to livestock in preparing them for market or slaughter are taxable.

Plaintiff paid, under protest, the taxes for August and October, 1937, and filed this action to recover the taxes so paid. From a judgment in favor of the Oklahoma Tax Commission, this appeal was taken.

The record discloses that the plaintiff operates feeding pens adjacent to the Oklahoma City stockyards. It receives and feeds livestock, principally cattle, belonging to others and charges for the

feed used and also makes a separate charge for the service. The period of intensive feeding by it is usually from 40 to 60 days. The result of such feeding is that the livestock take on added weight and the quality of the flesh when converted into beef is greatly improved, and is known as corn-fed beef. Animals so fed are easily distinguishable from those not so fed, and command a better price per pound.

We here set out the provisions of the act having a bearing on the question presented, and around which the argument of the parties revolves (the italics are ours):

"The following words, terms and phrases, when used in this Act, shall have the meanings ascribed to them in this Section, except where the context clearly indicates a different meaning: . . . (h) The terms 'consumer' or 'user' shall mean *the person to whom the sale is made,* or to whom taxable services are furnished." (Sec. 4.)

"There is hereby levied an excise tax of two (2%) per centum, except where a greater rate is hereinafter provided, upon the gross proceeds or gross receipts derived from the sale subsequent to May 31, 1937, to *consumers* or *users, for use or consumption,* of the following: (a) Tangible personal property. . . ." (Sec. 5.)

"There is hereby specifically exempted from the tax imposed by this Act the following: . . . (p) Gross receipts or gross proceeds derived from sales by wholesalers or jobbers to *retail merchants* for *resale* purposes." (Sec. 6.)

"In order for goods, wares, merchandise, and property to be classified as having been sold *for resale,* such articles must be the object of the subject matter to be sold and not articles that become incidental to the sale of other articles, such as wrapping, packing, crating or other incidental materials.

"Goods, wares, merchandise, and property sold for use in manufacturing, compounding, *processing,* assembling or *preparing for sale,* can be classified as having been sold for the purposes of *resale* or the subject matter of *resale* only in the event such goods, wares, merchandise, or property becomes a

*recognizable, integral part* of the manufactured, compounded, processed, assembled or *prepared products.* Such sales of goods, wares, merchandise, and property not conforming to this requirement are classified for the purpose of this Act as being 'for consumption or use'." (Paragraphs 3 and 4 of sec. 14.)

The plaintiff relies principally on the language used in the fourth subdivision of section 14, last above quoted. It contends that the feed was sold for use in *"processing"* or *"preparing for sale"* the livestock so fed by it, and that the feed so fed becomes "a recognizable integral part" of the finished product. It also contends that section 14 relates to the section which levies the tax, not to the exemption provision, and should be strictly construed against the tax. On the contrary, the Tax Commission denies such contention, and argues that section 14 relates to the exemption provision, and should be strictly construed against the plaintiff.

1. We are inclined to the position taken by the Tax Commission, and believe the trial court correctly held that the sales of the feed are taxable. We must assume that the Legislature intended the words used in the statute to be understood in their ordinary sense, except where they were given a different meaning in the act. Section 24, O. S. 1931, 25 O.S.A. § 1. The words "processing," "preparing for sale", and "recognizable, integral part" are not defined in the act. It is our duty to construe the various portions of the act, if possible, so as to make all parts harmonious. Bankers Union Life Ins. Co. v. Read, 182 Okla. 103, 77 P. 2d 26.

a. The word "resale" is not found in section 5, the provision levying the tax. The expression "for resale purposes" is found in section 6, which contains the exemption provisions. Then in section 14 (the first two paragraphs of which have to do with paying taxes as required by the act), we find in the fourth paragraph thereof the provision on which the plaintiff relies, and it contains the expressions "purposes of re-

sale" and "subject matter of resale." Said paragraph standing alone is meaningless, as it purports neither to levy a tax nor make an exemption. The last sentence of the paragraph makes it clear that articles of property not coming under the classification provided in the first sentence of the paragraph are classified "for consumption or use," which we must assume means they were subjected to the tax under the language used in section 5, "for use or consumption." We are, therefore, of the opinion that the first sentence in the fourth paragraph of section 14 refers back to the exemption provision, since the word "resale" is found only in sections 6 and 14, and it does not refer back to section 5, which levies the tax.

(b) Was the feed sold for use in "processing" or "preparing for sale" the livestock? We think not. In Webster's New International Dictionary, Second Edition, 1939, the word "process" is defined as follows:

"To subject to some special process or treatment. . . . Specif. (a) To heat, as fruit, with steam under pressure so as to cook or sterilize; (b) To subject (esp. raw material) to a process of manufacture, development, preparation for the market, etc.; to convert into marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruits and vegetables by sorting and repacking. . . ."

Under this definition the feed was processed when it was mixed and made ready for sale for feeding purposes. It was consumed, not processed, when it was fed to the livestock. A small part of it was changed, by nature, and converted into flesh and part into improving the quality of all the flesh of the animal. The case of Kennedy v. State Board, 224 Iowa, 405, 276 N. W. 205, is in point. It was there held that the use of fertilizer added to the ground to stimulate the growth of vegetables and increase the quantity produced was not a "processing of tangible personal property" as that term was used in the Iowa Sales Tax Law so as to exempt the sale of the fertilizer from the tax.

The quoted definition of the word "process" shows that it is synonymous with the expression "preparation for the market," which in turn has the same meaning as the expression "preparing for sale" used in the statute under consideration. The feed was "prepared for sale" when it was mixed, processed, and made ready for sale for the purpose of feeding it to the livestock. The cattle were "processed" or "prepared for sale" when they were slaughtered, dressed and cured, and thereby made ready for human consumption. The feeding was a preliminary step in getting the cattle ready for "processing" or "preparing for sale."

We have carefully examined the authorities on which plaintiff relies and are of the opinion that they do not support his contention. While those authorities (C. & E. Marshall Co. v. Ames, 373 Ill. 381, 26 N. E. 2d 483, Smith Oil & Ref. Co. v. Department of Finance of Illinois, 371 Ill. 405, 21 N. E. 2d 292, and Georgia Paper Stock Co. v. State Tax Board of Georgia, 174 Ga. 816, 164 S. E. 197) discuss some of the terms used in the statute involved in the instant case, the statutes under consideration in such authorities are so different from the statute here involved that they do not help in solving our problem.

We conclude that the feed was sold to the owner of the cattle, who was the "consumer" or "user", and that it was sold for "consumption" as those terms are used in sections 4 and 5 of the act. The feed was not sold to the owner of the cattle for use in "processing" or "preparing for sale" so that the same becomes a "recognizable, integral part" of any finished product "for the purposes of resale" or "the subject matter of resale," so as to exempt sales from liability for the tax as provided in sections 6 and 14.

Affirmed.

WELCH, C. J., CORN, V. C. J., and RILEY, BAYLESS, and GIBSON, JJ., concur. OSBORN, DAVISON, and ARNOLD, JJ., absent.