SUGAR CREEK CREAMERY COMPANY v. WALKER.

4-7592                                              187 S. W. 2d 178

Opinion delivered April 30, 1945.

*McMillan & McMillan* and *Franklin E. Reagon,* for appellant.

*G. W. Lookadoo* and *J. H. Lookadoo,* for appellee.

McFADDIN, J. Appellees, Walker and Baker, as former employees, instituted separate actions against appellant to recover for amounts claimed as overtime under the Fair Labor Standards Act (U.S.C.A. Title 29, §§ 201, et seq.). Section 207(a) of the Act reads:

"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce . . . for a work week longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

The appellant had a plant in Arkadelphia, Arkansas, where it manufactured milk into Cheddar cheese, and cream into bulk butter. In the milk-to-cheese process, the milk was brought to the plant, and passed through pipes in a continuous sequence for weighing, warming, filtering, and being subjected to "flash" pasteurization. The milk then went into a cheese vat where rennet was added, and the milk became Cheddar cheese, which was pressed into hoops and ready for sale as Cheddar cheese; or it could be subjected to further process at some other place and become American processed cheese.

In the cream-to-butter process, the cream was brought to the plant, and passed through pipes in a continuous sequence for weighing, warming, filtering, and being subjected to "flash" pasteurization. Then the cream went into a cooler and to a churn where it became butter and was molded into large blocks, and could be sold as bulk butter; or could be subjected to further processing at some other place, and be cut into one-pound blocks, wrapped and boxed for sale.

The actual business of this plant was to manufacture milk into Cheddar cheese and cream into bulk butter; and each step was a necessary normal sequence from the time the milk or cream entered the plant as the raw material until the Cheddar cheese or bulk butter came out as the finished product. The fact that on one or two occasions

some milk—after "flash" pasteurization—was sold to a dairy, is not sufficient to show that the business of this plant was anything other than making milk into cheese and cream into butter. It was shown that "flash" pasteurization was sufficient pasteurization of the raw product if it was to be manufactured into butter or cheese, but that a different kind of pasteurization would be customary or required in the treatment of milk for commercial sale as pasteurized milk by a dairy.

Walker's work consisted in securing milk for the plant. He also worked in the plant unloading the containers, testing and weighing the cream, washing cans, taking the cheese curd out of the vat, and other such work. Baker's work was that of a cheese-maker at the plant. Each sued for overtime, admitting to have received pay at the regular rate for all hours worked, but claiming to be entitled to pay of one and one-half times the regular rate for all hours worked in excess of forty hours per week. The cases were consolidated and tried before the court sitting as a jury, and resulted in judgments for the plaintiffs. This appeal follows.

The appellant has abandoned all questions except this one: "Does the appellant come within the first exemption of § 207(c) of the Fair Labor Standards Act?" This exemption reads:

"In the case of an employer engaged in the first processing of milk, whey, skimmed milk, or cream into dairy products, . . . the provisions of subsection (a) shall not apply to his employees in any place of employment where he is so engaged . . ."

We must therefore construe the expression "first processing of milk . . . or cream into dairy products." The appellant contends that the entire sequence from milk to Cheddar cheese is *first processing;* and that the entire sequence from cream to bulk butter is *first processing.* The appellees contend that, in each instance, the *first processing* ends with the "flash" pasteurization. So far as we have been able to find, no court has ever considered this identical question, although we will later

mention and discuss cases involving the "first processing" language in the Fair Labor Standards Act.

From the evidence in the record before us we reach the conclusion that in the appellant's plant at Arkadelphia the "flash" pasteurization was a mere step in the manufacture of Cheddar cheese in the one instance, and bulk butter in the other; and that the entire manufacturing operation, from milk to Cheddar cheese, and cream to butter, was the *first processing* of milk or cream to a dairy product. This conclusion means that the appellant was exempt from the Fair Labor Standards Act in the case of the two appellees here.

Of course, if a plant be used for the pasteurization of raw milk into commercial pasteurized milk for resale as such, then pasteurization in itself would be the first processing, because, in such a case, the commercial pasteurized milk would become the dairy product. But here the making of Cheddar cheese or bulk butter was the first processing. The dairy product was not commercial pasteurized milk, but Cheddar cheese and bulk butter.

Our conclusions are strengthened by (1) the interpretation which the Wage and Hour Division of the Department of Labor has given the § 207(c); and (2) by cases construing the "first processing" exemption provision. We mention these.

(1) Interpretative Bulletin No. 14 of the Wage and Hour Division of the Department of Labor was issued in December, 1940, many months before either of the appellees did any work resulting in the claims in this appeal. Section 14 of the said bulletin, in discussing the *"complete exemption"* under § 207(c) of the Fair Labor Standards Act, says:

"Thus, it will be observed that this section grants . . . a complete exemption from the hour provisions to employees 'in any place of employment' where their employer is engaged in the first processing of milk, whey, skimmed milk, or cream into dairy products.

". . . there is no limit to the hours which the employees may work during the exempt period without being entitled to any overtime compensation under the act."

In § 15 of the same bulletin, in discussing "first processing," it is said:

"In considering what activities fall within this term, it seems essential to determine the significance of the word 'processing'. In our opinion 'processing' connotes a change in the form of the raw materials. It follows that 'first processing' means the first such change in the form of the raw materials. . . . It is also clear from the congressional debates that the making of nonprocess cheese is included within the 'first processing of *milk*.' However, the further processing of non-process cheese into process cheese is not included. . . . The 'first processing of . . . *cream*' includes the making of butter, . . . The further processing of butter into process butter is not included."

(We have mentioned previously that Cheddar cheese is non-processed cheese.)

As before stated, this interpretative bulletin was issued in 1940, long before any work was performed by the appellees for appellant in the case here; and the administrative bulletin (a reprint of an earlier bulletin of 1939) was made under the authority of the Fair Labor Standards Act. In so far as the matters here concerned are involved, the bulletin is well within the channel provided for such administrative bulletins. It is not susceptible of the defect that resulted in the opinion in *Addison* v. *Holly Hill Fruit Products*, 322 U. S. 607, 64 S. Ct. 1215, 88 L. Ed. 1488.

(2) The cases cited as construing the "first processing" exemption clause of the Fair Labor Standards Act are *Hendricks* v. *Di Giorgio Fruit Corp.*, (U. S. District Court of the Northern District of California, decided April 7, 1943) 49 Fed. Suppl. 573, and *Shain* v. *Armour & Co.*, (U. S. District Court of the Western District of Kentucky, decided June 17, 1943) 50 Fed. Suppl. 907. In the

Hendricks case there was involved a discussion of "first processing," and the court said, 49 Fed. Supp. 575:

"If first processing does not mean the processing that first results in a marketable product, where is the line to be drawn? It is true that the wine or brandy making process may be broken down into component processes or operations, and that these in turn may be broken down still further. But the same thing is true of any other process as, for example, the production of . . . butter, cheese, . . . all of which, the Administrator has held, fall within the exemption. . . . To choose one of the earlier steps in such continuous process and say this and no more constitutes first processing would be arbitrary and unwarranted."

In the Shain case the court said:

"Such employees as devote their time exclusively to the first processing of cream into butter at the place of employment are entitled to the exemption. But with respect to cream which is churned elsewhere and brought into the plant in tubs in bulk, the work of employees in dealing with this product is not the first process of the cream, as is required in order for the exemption to be applicable. . . . the court rules that employees transporting cream to the plant as well as those employed on the receiving dock and in pasteurizing and churning cream would be exempted in that they would be performing first processing operations, or work so related thereto that it could not be segregated for practical purposes." See, also, *Fleming* v. *Swift & Co.*, 41 Fed. Suppl. 825, affirmed in 131.Fed. 2d 249. These cases are persuasive, and show the tendency of the courts in construing the exemption clause.

Appellees cite us to *Moore* v. *Farmers' Mutual Mfg. & Ginning Co.*, 51 Ariz. 378, 77 Pac. 209; *Aurrichio* v. *U. S.*, 49 Fed. Suppl. 184; *Zeigler* v. *People*, 109 Colo. 252, 124 Pac. 2d 593; and *Colbert Mill & Feed Co.* v. *Oklahoma Tax Commission*, 188 Okla. 366, 109 Pac. 2d 504, as cases in which the word "processing" was considered. But these cases are not in point. None of them involved the

language "first processing" as in the Fair Labor Standards Act. Each involved some other law, of a state or federal nature, entirely distinct from the Fair Labor Standards Act.

Finally, appellees cite Webster's Dictionary, where process is defined as:

"a. To subject to some special process of treatment. Specif.: (a) To heat, as fruit, with steam under pressure, so as to cook or sterilize. (b) To subject (esp. raw material) to a process of manufacture, development, preparation for the market, etc.; to convert into marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, *milk by pasteurizing,* fruits and vegetables by sorting and repacking."

It is there stated as one illustration of the word "process," that it is to "heat or sterilize milk by pasteurizing." The dictionary gives only one illustration where processing could consist in pasteurization. That case can exist as in a commercial dairy. But the illustration does not apply here, as we have shown, for the first processing of milk or cream into dairy products in the plant of the appellant at Arkadelphia, Arkansas, consists in the entire procedure of making milk into Cheddar cheese and cream into bulk butter.

It follows therefore that the judgment of the lower court is reversed, and the causes are dismissed.