Teague *v.* Scurlock, Commissioner of Revenues.

5-321                                          265 S. W. 2d 528

Opinion delivered March 8, 1954.

*Bailey & Warren* and *Bruce T. Bullion,* for appellant.

*O. T. Ward* and *Russell Reinmiller*, for appellee.

Ed. F. McFaddin, Justice. This suit is an effort to obtain a tax exemption on commercial poultry feed.

The appellant is engaged in the business of raising chickens and turkeys for the commercial market: he buys day-old chickens and turkeys, feeds them only commercial poultry feed, and then sells them when they reach the size and weight for marketing. We refer to this as the "broiler business".[1] The commercial poultry feed which appellant buys from outside of Arkansas has been held by the appellee, Revenue Commissioner, to be subject to the 2% use tax under Act 487 of 1949 (now found in § 84-3101 *et seq.* Ark. Stats. Cumulative Pocket

---

[1] Webster's Dictionary defines broiler as: "A chicken or other bird fit for broiling, especially a young chicken weighing up to two and one-half pounds dressed."

Supplement). Under protest, appellant paid such use tax; and then filed this suit for refund, pursuant to § 20 of Act 487 of 1949 (now found in § 84-3120 Ark. Stats. Cumulative Pocket Supplement). The Trial Court ruled against appellant; and on this appeal he states the question to be: "Does the use tax (Act 487 of 1949) apply to the purchase of commercially produced poultry feed when sold to persons engaged in the production of poultry for consumption on the general market, those poultry products being fed nothing but said feeds in the process of their production?"

Appellant argues the posed question under three headings, which we now quote and discuss:

I. *Appellant Says: "These Poultry Feeds Are Specifically Excluded from This Tax by § 6 of Act 487 of 1949."*

The germane language of exemption upon which appellant relies is in § 6 of the Act, and reads:

"There are hereby specifically exempted from the taxes levied in this Act: . . . (d) Tangible personal property used by manufacturers or processors or distributors for further processing, compounding or manufacturing; . . ."

In his effort to bring the purchase of the commercial poultry feed within the foregoing quoted statutory exemption, appellant argues that he is in effect a "manufacturer" or "processor" of poultry for the commercial market; that he purchases the commercial feed and feeds it to the chickens and thereby, in effect, processes the commercial feed into the broiler; and that in reality, the broiler is the commercial feed in another form. This is a very ingenious argument, but one which has been denied in other cases. One such case is *Colbert Mill* v. *Okla. Tax Comm.*, 188 Okla. 366, 109 Pac. 2d 504. In that case, the Colbert Company was engaged in the business of feeding cattle for the market, and claimed that the feed purchased and fed to such cattle was exempt from the Oklahoma Consumers and Users Tax. The Court denied the claimed exemption, saying that the

feed was not sold to the owner of the cattle for use in "processing" or "preparing for sale" so that the same (feed) becomes "a recognizable integral part" of any finished product "for the purpose of resale," or "the subject matter of resale" so as to exempt the sale from the tax.

Without lengthening this opinion to state in detail appellant's arguments and our reasons for holding against them, it is sufficient to say that we hold that the statutory language of exemption, as hereinbefore copied, does not afford the appellant any relief, because his business is not such "processing, compounding or manufacturing" of commercial feed into broilers as is contemplated by the language used in the Statute.

II. *The Appellant Says: "The Legislature IN-TENDED to exempt all of the Ingredients or Component Parts Necessary to Make a Finished Product for Subsequent Re-sale, and this Without Exception or Exclusion."* Under this topic, appellant argues: (a) that the use tax here involved (Act 487 of 1949) is the complement of the sales tax (Act 386 of 1941, as amended); (b) that the taxes are "consumer taxes"; (c) that the spirit of these laws of consumer taxes is that the consumption shall only be taxed once; (d) that when the baker buys flour for bread for commercial sale the baker pays no tax on the flour purchased because the tax is on the loaf of bread; and (e) that by the same token the appellant should pay no tax on the purchase of the commercial poultry feed because the tax should be on the grown chicken, i. e., the broiler. Thus appellant is saying, in effect, that the intention of the Legislature was and is that there shall be one, and only one, consumer tax.

Conceding without deciding that the foregoing statements are correct as to the nature and purpose of the use tax here involved, we then examine to see where the Legislature placed the exemption in the case at bar. There is no tax on the flour purchased by the baker, because that flour is manufactured into a loaf of bread that is taxed. But there is a tax on the gas or elec-

tricity used by the baker in baking the bread. It is the flour that becomes the bread—not the heat used in baking the bread. So also with the broiler industry in which appellant is engaged: the Legislature, by Act 15 of 1949, has exempted the sale of baby chickens from the gross receipts tax,[2] just as it has exempted the flour of the baker. And just as the Legislature has levied the tax on the fuel used in the baking of the bread from the flour, so the Legislature has levied the tax on the commercial feed used by the appellant in growing his baby chickens into broilers. So the Legislative intent exempts the baby chickens and not the commercial feed.

Furthermore, on this matter of Legislative intent, we think it proper to point out that the 1953 Legislature passed a bill which, among other things, specifically exempted chicken feed; and such bill was vetoed by the Governor.[3] If the Legislative intent of Act 487 of 1949 had been to exempt chicken feed, then there was certainly no occasion for the 1953 Legislature—in advance of judicial determination contrary to that Legislative intention—to pass a bill that granted a specific exemption to chicken feed. So we deny appellant's claim that the Legislative intent—carried into law—was to exempt chicken feed from the use tax.

III. *The Appellant Says: "This Law as Attempted to be Enforced by Appellee Would Be Unconstitutional."* In the argument under this section, the appellant says, in effect, that unless we hold the purchase of commercial poultry feed to be exempt, then the classification of exemptions in § 6 of the Act is arbitrary and unreasonable, and therefore, the law is unconstitutional. We are unable to tell whether the appellant means that the entire Act 487 of 1949 should be held unconstitu-

---

[2] Section 2 of Act 15 of 1949 is specific in this regard. It says: "It being the intention of this Act to exempt the sale of baby chickens from the provisions of Act 386 of 1941."

[3] This was H. B. 395 of 1953. It was vetoed by the Governor. We take judicial notice of such bill and veto because each is a part of the record of the General Assembly and a part of the record in the Office of the Secretary of State. See *Grant* v. *Hardage*, 106 Ark. 506, 153 S. W. 826, and other cases collected in West's Ark. Digest, "Evidence," § 33.

tional, or merely that § 6 of the Act (being the section which allows exemptions) should be held unconstitutional; but he is not entitled to prevail on either argument. Section 29 of Act 487, which is the severability clause, says:

"If any section . . . of this act . . . or the application thereof in any particular case . . . is held to be unconstitutional, such decision shall not affect the remaining portions of this Act or their application in other cases or to other persons not similarly situated. The Legislature hereby declares that it would have passed the remaining portions of this Act irrespective of the fact that such section . . . be declared unconstitutional."

The striking of § 6 of the Act would leave all the other sections to stand, and the tax would remain, as the Act is constitutional. In this connection, however, we think it well to state, unmistakably, that the power to grant exemptions has not been arbitrarily exercised, and that Section 6 of the Act is valid as against the attack here made.

The decree is affirmed.

Mr. Justice ROBINSON not participating.

