Clyde **CASTLEBERRY**, Appellant,

v.

**ACCO FEEDS, DIVISION OF ANDERSON, CLAYTON & CO.**, Appellee.

No. 4796.

Court of Civil Appeals of Texas, Eastland.

June 27, 1975.

Rehearing Denied July 18, 1975.

Michael M. Martin, Lynch, Nored, Martin & Millican, Lampasas, for appellant.

Bill Tippen, Bradbury, Tippen & Cross, Abilene, for appellee.

WALTER, Justice.

This is a venue case. Acco Feeds, Division of Anderson, Clayton & Co., filed suit against Clyde Castleberry on an open account in Taylor County, Texas, where its office is located. Castleberry filed a plea of privilege to be sued in Burnet County, the county of his residence and the county in which he signed the delivery tickets on his purchases of feed from Acco. In its controverting plea, plaintiff alleges that in all the signed delivery tickets there is a provision that the accounts are payable at Acco's office in Abilene, Texas. The Court overruled Castleberry's plea of privilege and he has appealed.

Subdivision 5 of Article 1995, Vernon's Ann.Tex.Rev.Civ.St., is as follows:

"5. Contract in writing. (a) Subject to the provisions of Subsection (b), if a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile.

b. In an action founded upon a contractual obligation of the defendant to pay money arising out of or based upon a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household or agricultural use, suit by a creditor upon or by reason of such obligation may be brought against the defendant either in the county in which the defendant in fact signed the contract, or in the county in which the defendant resides at the time of the commencement of the action. No term or statement contained in an obligation described in this subsection shall constitute a waiver of this provision. Subd. 5 amended by Acts 1973, 63rd Leg., p. 489, ch. 213, § 1, eff. August 27, 1973."

The facts are undisputed. The parties agree this is a case of first impression. Plaintiff suggests that subdivision 5 of Article 1995 was passed by the legislature pursuant to a law review article written by

Professor John J. Sampson of the University of Texas Law School which appeared in 51 Tex.Law.Rev. 269 (1973).

Plaintiff says:

"Professor Sampson specifically points out that to construe section 5(b) to apply to the situation in which a large corporate farmer purchases goods on credit would be a distortion of the intent of the revision of this section. As he points out, the large farmer has relatively great bargaining power and does not require the protection of the article. Mr. Castleberry raised cattle on approximately 3,000 acres of land, and owned approximately $350,000.00 worth of cattle. Appellee would respectfully submit to the Court that Mr. Castleberry is not the small farmer or the small consumer whose interest the legislature had in mind in revising this provision of Article 1995."

Defendant runs a cow and calf operation and purchased the feed from plaintiff to feed his cattle.

In *Southern Iron & Metal Company v. Yaffe*, 351 S.W.2d 664 (Tex.Civ.App.—Waco 1961, no writ), the court said:

". . . A consumer is one who 'uses economic goods and so diminishes or destroys their utilities', and one who buys goods for re-sale is not a consumer, in the ordinary meaning of the term. 9 Words and Phrases Consumer, p. 12; and see *Ex parte Mehlam*, 127 Tex.Cr.R. 257, 75 S.W.2d 689, 690."

In *Ex parte Mehlam*, 127 Tex.Cr.R. 257, 75 S.W.2d 689 (1934), at page 690, the court said:

". . . The word 'consumer,' not being defined in the act, must be taken and construed in the sense in which it is understood in common language. Article 8, Penal Code. Webster's International Dictionary defines a 'consumer' as: 'One who uses (economic) goods and so diminishes or destroys their utilities;—opposed to producer.' The same authority defines the word 'consume' to mean, 'use up, expend, waste, devour,' and gives as synonyms the following: 'Destroy, swallow up, engulf, absorb, waste, exhaust, spend, squander, lavish, dissipate, burn up.' In *State v. Lagomarcino-Grupe Co.*, 207 Iowa, 621, 223 N.W. 512, 513, the Supreme Court of Iowa, in construing the word 'consumer' as employed in a statute levying a tax on cigarettes, used language as follows: 'The word "consume" has a general and popular meaning which is consistent with the dictionary definition and which it must be assumed was in the mind of the Legislature at the time of the enactment of the statute in question.'"

In *Colbert Mill & Feed Co. v. Oklahoma Tax Commission*, 188 Okl. 366, 109 P.2d 504 (1941), the Supreme Court of Oklahoma held:

"We conclude that the feed was sold to the owner of the cattle, who was the 'consumer' or 'user', and that it was sold for 'consumption' as those terms are used in Secs. 4 and 5 of the Act."

In construing civil statutes, "The ordinary signification shall be applied to words, . . .", Article 10, V.A.C.S. In *Railroad Commission of Texas v. Miller*, 434 S.W.2d 670 (Tex.1968), our Supreme Court said:

". . . There is no basis for saying that employment of the term 'effecting pooling' in Section 2(g) did not express the true intent of the Legislature, or that the use of the term resulted from inadvertence, or mistake, or artless and unskillful draftsmanship. The situation, then, is as expressed in *Texas Highway Commission v. El Paso Bldg. & Const. Trades Council*, 149 Tex. 457, 234 S.W.2d 857 (1950):

'Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they

must find its intent in its language, and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.' *Simons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70.

We restated these governing principles in *City of Port Arthur v. Tillman*, 398 S.W.2d 750 (Tex.Sup.1965):

'In the case of *Brazos River Authority v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99 (1961), we wrote the following: * * * "This brings to mind the maxim that 'If Parliament does not mean what it says, it must say so.' * * * We may not invade the legislative field. There is nothing ambiguous or uncertain about the literal meaning of the Act * * *"' '."

In Webster's Third New International Dictionary the term agriculture is defined: "1a: the science or art of cultivating the soil, harvesting crops, and raising livestock: Tillage, Husbandry, Farming b: the science or art of the production of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their disposal (as by marketing)."

We must find the intent of the Legislature from the language used in the statute and not from other sources. We hold the plaintiff's cause of action is founded on a contractual obligation of the defendant to pay money arising out of a consumer transaction for goods intended primarily for agriculture use. The evidence conclusively shows as a matter of law that the defendant's plea of privilege should have been sustained.

The judgment is reversed and judgment is rendered for the defendant, Clyde Castleberry.

RALEIGH BROWN, J., not participating.