Ramiro AMAYA et al., Appellants,

v.

TEXAS SECURITIES CORPORATION, Appellee.

No. 15430.

Court of Civil Appeals of Texas, San Antonio.

July 30, 1975.

Rehearing Denied Sept. 10, 1975.

Barry Snell, San Antonio, Anne Julia Colvig, Edinburg, for appellants.

Dobbins, Howard & Harris, Richard W. Harris, San Antonio, for appellee.

**KLINGEMAN, Justice.**

This is a venue action involving the provisions of Subdivision (b) of Section 5 of Article 1995, Tex.Rev.Civ.Stat.Ann. (Supp. 1975). Appellee, Texas Securities Corporation, sued appellants, Ramiro Amaya and wife, Delia G. Amaya, in Bexar County, Texas, for non-payment of a debt for certain paving lien improvements made to property in Hidalgo County, Texas, and to foreclose its mechanics and materialmen's lien on such property. Appellants filed a plea of privilege asserting their rights to be sued in Hidalgo County, Texas, the county of their residence. Appellee filed a controverting affidavit asserting that venue was proper under Section 5 of Article 1995 [1] because the mechanics and materialmen's lien contract provided that the obligation was payable in San Antonio, Bexar County, Texas. The trial court, after a non-jury trial, overruled the plea of privilege. The trial court filed findings of fact and conclusions of law.[2]

1. "(a) Subject to the provisions of Subsection (b), if a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile."

2. Findings of Fact

"1. On August 3, 1971, Ramiro Amaya, and wife, Delia G. Amaya, made, executed, and delivered to Mission Paving Company, Inc., a written Builders, Mechanic's and Materialmen's Lien contract in which they promised to pay Mission Paving Company, Inc., the sum of $351.00.

2. Texas Securities Corporation is presently the owner and holder of the above contract.

3. The contract is payable at the office of Texas Securities Corporation in the City of San Antonio, Bexar County, Texas.

4. The above contractual obligation was incurred by Defendants to pay for the cost of constructing certain street improvements abutting Defendants' residence in the City of Mission, Hidalgo County, Texas.

5. The contract was signed by Defendants in the City of Mission, Hidalgo County, Texas.

6. The Defendants resided in Mission City, Hidalgo County, Texas, at the time of signing the contract, at the time of commencement of this action, and at the present time.

7. The property of Defendants abutting the street upon which the paving and improvements were done constitutes the private residence of the Defendants."

Conclusions of Law

"1. Venue in this action is maintainable in Bexar County, Texas pursuant to Tex.Rev.Civ.Stat.Ann. art. 1995, § 5(a), in that Defendants have contracted in writing to perform an obligation in Bexar County.

2. Tex.Rev.Civ.Stat.Ann. art. 1995, § 5(b) is not applicable to this transaction, in that a contract for paving improvements on a street abutting a private residence does not constitute a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household or agricultural use."

By one point of error, appellants assert the trial court erred in overruling appellants' plea of privilege because the action arises out of a "consumer transaction" and venue is controlled by Section 5(b) of Article 1995.

Subdivision (b) of Section 5, Article 1995, was enacted by the Legislature to help eliminate what is sometimes referred to as "the distant forum abuse." Such amendment apparently was enacted as a result of an article by Professor John J. Sampson entitled "Distant Forum Abuse in Consumer Transactions: A Proposed Solution," 51 Texas L.Rev. 269 (1973). In such article, Professor Sampson points out that some credit companies and lending institutions have made the defense of consumer transaction lawsuits difficult and expensive by inserting a provision in a written contract naming a place of payment at least 100 miles distant from the place where the transaction actually occurred. By so doing, it would make more difficult, or effectively defeat, the debtor's ability to subpoena witnesses in his defense (Rule 176, Tex.R.Civ.P. [Supp.1975]). In addition, Mr. Sampson points out that statistics indicate a high incidence of default judgments taken in cases where the suit is brought in a distant forum because of the high expenses and difficulties imposed on the debtor.

The amendment enacted by the legislature is verbatim with the proposed change by Professor Sampson in such article and reads as follows:

"(b) In an action founded upon a contractual obligation of the defendant to pay money arising out of or based upon a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household or agricultural use, suit by a creditor upon or by reason of such obligation may be brought against the defendant either in the county in which the defendant in fact signed the contract, or in the county in which the defendant resides at the time of the commencement of the action. No term or statement contained in an obligation described in this subsection shall constitute a waiver of this provision."

On August 3, 1971, Ramiro Amaya and wife executed a mechanics and materialmen's lien for paving improvements with Mission Paving Company. The paving improvements were to be made on the street abutting the Amaya home. The home is a private residence in Hidalgo County, Texas, and is the homestead of the Amayas. The contract was signed in Hidalgo County and the work was done in Hidalgo County. The mechanics and materialmen's lien contract, however, is made payable at the office of the Texas Securities Corporation in Bexar County, Texas.

As will be noted from the provisions of Subdivision 5(b), if a suit arises out of a consumer transaction for goods and services intended primarily for personal, family or household use, the venue is now in the county where the contract was signed or in the county in which the consumer resided at the time of the transaction. This is true regardless of where the contract is made payable.

Appellee asserts that venue is properly vested in Bexar County under Article 1995, Section 5(a) because of the provision in the mechanics and materialmen's lien contract which provides that the obligation created therein shall be payable at the office of the Texas Securities Corporation in the City of San Antonio, Bexar County, Texas. Appellee contends that Subdivision (b) of Section 5 is not applicable for two basic reasons: (1) the paving improvements here involved are not consumer goods or services; (2) Subdivision (b) does not cover or apply to a lien given by a statute and the lien herein involved is both a statutory lien by virtue of the levy of a paving assessment by the City of Mission under provisions of Article 1105b, Tex.Rev.Civ.Stat.Ann. (Supp.1975), and is also a constitutional and statutory

lien for the furnishing of labor and material by virtue of Article 16, Section 37 of the Constitution of the State of Texas and Article 5452 et seq., Tex.Rev.Civ.Stat.Ann. (Supp.1975).

Both parties agree that this is a case of first impression in regard to the construction or application of Subdivision (b) of Section 5, Article 1995, in this type of transaction. Subdivision (b) does not define a "consumer's transaction for goods, services, loans or extensions of credit intended primarily for personal, family, household or agricultural use." In this connection, we have looked at other codes or statutes dealing with consumer credit transactions for whatever aid they might be in ascertaining what is meant by such terms. Article 9 of the Uniform Commercial Code provides that "Goods are 'consumer goods' if they are used or brought for use primarily for personal, family or household purposes." Texas Business and Commerce Code Ann., Article 9.109(1). The Truth in Lending Act [15 U.S.C.A., Section 1602(h) 1970] (Consumer Credit Protection) states that the adjective "consumer" used with reference to a credit transaction, characterizes the transaction as one in which the party to whom the credit is offered or extended is a natural person, and the money, property or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes.

It has been stated that the Texas Act was patterned after California statutes; and in this connection, the California Civil Code contains these definitions of goods and services:

"1802.1 Goods

'Goods' means tangible chattels bought for use primarily for personal, family or household purposes, including goods which, at the time of the sale or subsequently are to be affixed to real property as to become a part of such real property whether or not severable therefrom, . . . ."

"1802.2 Services

'Services' means work, labor and services for other than commercial or business use, including services furnished in connection with the sale or repair of goods as defined in 1802.1 or furnished in connection with the repair of motor vehicles or in connection with the improvements of real property."

■ We have been cited no case nor have we found any construing what constitutes a consumer transaction under the venue provisions of Subdivision (b) of Section 5, Article 1995. Appellants contend the factor which segregates a "consumer" transaction from other kinds of transactions is the intended use of the goods, services, loans or extensions of credit; that the property here involved is a private residence and the purpose of improving the street in front is to make it easier for the family to come and go and to better accomplish the countless personal, family or household trips which arise each day for all families; that the transaction here involved is clearly a consumer transaction for goods and services intended primarily for personal, family or household use. We so regard it.

■ Appellee contends that Subdivision (b) is not applicable because the lien and obligation is a statutory lien under Article 1105b. The flaw in this contention is that the obligation sued upon was not the paving certificate but the mechanics and materialmen's lien signed by the Amayas. It is true that a paving lien obligation can be created by Article 1105b. However, the paving lien or certificate of assessment here involved was not introduced into evidence and the only thing in writing placing venue in Bexar County, Texas, is the mechanics and materialmen's lien contract signed by the Amayas. Moreover, the suit also seeks a foreclosure of the lien on the property. It appears from the record that the property is the homestead of the Amayas, and the statutory paving lien under Article 1105b would not be effective to establish an enforceable, foreclosable lien on the property, and in order to accomplish this under our

constitutional and statutory provisions, it was necessary to take a mechanics and materialmen's lien for improvements to the property, signed by the Amayas. It is clear that the obligation here sued upon was the mechanics and materialmen's lien for two dominant reasons: (1) it was the only instrument in writing placing venue in Bexar County, Texas; (2) it is the only instrument upon which a foreclosure of the property could be had.[3]

In our opinion, the transaction here involved is a consumer transaction governed and controlled by the venue provisions of Subdivision (b) of Section 5, Article 1995. The trial court improperly overruled appellants' plea of privilege. The judgment is reversed and remanded to the trial court with instructions that the cause be transferred to the District Court of Hidalgo County, Texas.

BARROW, Chief Justice (dissenting).

I respectfully dissent.

It should be emphasized at the outset that the Texas Legislature did not adopt the definitions found in the California Statutes. The only definition of "consumer goods" given by the Texas Legislature is that found in Section 9.109 of the Uniform Commercial Code which provides: "Goods are 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes." This is a much narrower definition than the construction adopted by the majority.

It is seen that Professor Sampson, in his timely article pointing out distant forum abuses,[1] said that the adoption of his suggested Subdivision 5(b) to Article 1995, Tex.Rev.Civ.Stat.Ann. (Supp.1975), would include "all normal consumer transactions."

He illustrated such transactions as follows: "Thus, suit upon an obligation based on a credit purchase of any consumer good or service—whether an automobile, household furnishings, personal affects or a small loan—presumptively falls within exception 5(b)."

I agree wholeheartedly with the purpose accomplished by the enactment of Subdivision 5(b) of Article 1995, Tex.Rev.Civ.Stat. Ann. (Supp.1975). Furthermore, I agree that it is desirable that a suit for foreclosure of a paving lien should be brought in the county where the land is located. I cannot agree, however, with the majority holding that a paving lien is a "consumer transaction" within the purview of Subdivision 5(b) of Article 1995 simply because a family uses the street in front of the house to come and go and to better accomplish the countless personal, family or household trips.

---

**3.** In addition to the fact that no foreclosure could be had on homestead property under the statutory paving lien, the land here involved is situated in Hidalgo County, Texas, and in this connection Section 14 of Article 1995 (1969) provides: "Suits for the recovery of lands or damages thereto, or to remove incumbrances upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie."

**1.** Sampson, Distant Forum Abuse in Consumer Transactions: A Proposed Solution, 51 Texas L.Rev. 269, 283 (1973).