**BEEF CATTLE CO., Appellant,**

v.

**N. K. PARRISH, INC., Appellee.**

**No. 8760.**

Court of Civil Appeals of Texas,
Amarillo.

June 20, 1977.

Gibson, Ochsner, Adkins, Harlan & Hankins, Herman Jesko, Amarillo, for appellant.

Garner, Vickers & Purdom, Robert E. Garner, Lubbock, for appellee.

ELLIS, Chief Justice.

Venue in this action on a sworn account seeking recovery of an alleged unpaid balance owing to the plaintiff, N. K. Parrish, Inc., for grain purchased by the defendant, Beef Cattle Co., was sustained in Lubbock County, the county in which the suit was instituted. The defendant cattle company filed its plea of privilege which was controverted by the plaintiff and overruled by the trial court. The cattle company has appealed and contends that venue lies in Wheeler County under the provisions of subdivision 5(b) of the venue statute. The facts have been stipulated and the basic question here is whether under the stipulated facts, subdivision 5(b) is applicable. The appellant specifically contends that the defendant corporation was not a consumer of agricultural goods within the contemplation of the provisions of 5(b), an exception to 5(a), and that 5(b) was inapplicable to this transaction. We reverse and render judgment that the cause be transferred to Wheeler County.

The cattle company, a Texas corporation, has its residence and domicile in Wheeler County, Texas, and operates a custom cattle feeding business. In 1974, it agreed to purchase 1,008,000 pounds of milo from Parrish, the plaintiff. This agreement was confirmed in writing and signed by the defendant in Wheeler County. By the terms of this written confirmation, the contract was performable in Lubbock County and the parties have stipulated that subdivision 5(a) would operate to hold venue in Lubbock County if 5(b) does not apply. The parties also stipulated:

7. That the business of BEEF CATTLE CO. is agricultural, and that the contract and agreement for the purchase of milo was intended primarily for agricultural use, such milo being used as foodstuff in Defendant's custom cattle feeding operation and resold to owners of cattle in a ration.

Although the milo was delivered and accepted, the plaintiff has alleged that the defendant paid for only part of it. This suit was brought to recover the unpaid balance. The cattle company has appealed from the trial court's order overruling its plea of privilege. In its two points of error, the cattle company has argued that venue lies only in Wheeler County under the terms of Tex.Rev.Civ.Stat.Ann. art. 1995, subd. 5(b) (Supp.1976).

Subdivision 5 of article 1995 was expanded by the legislature in 1973. The statute now provides:

5. Contract in writing.—(a) Subject to the provisions of Subsection (b), if a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile.

(b) In an action founded upon a contractual obligation of the defendant to pay money arising out of or based upon a *consumer transaction* for goods, services, loans, or extensions of credit intended primarily for personal, family, household or agricultural use, suit by a creditor upon or by reason of such obligation may be brought against the defendant either in the county in which the defendant in fact signed the contract, or in the county in which the defendant resides at the time of the commencement of the action. No term or statement contained in an obligation described in this subsection shall constitute a waiver of this provision. (Emphasis added.)

Part (a) was left substantially unchanged; part (b) is entirely new.

Applying part (b) to the facts before us, it is plain that this contract involved "goods . . . intended primarily for . . . agricultural use . . ." as those terms are used in the statute. In stipulation 7 (quoted above), the parties agreed that "the purchase of milo was intended primarily for agricultural use . . .." In doing so, they have stipulated to one of the venue facts within the purview of subdivision 5(b). The only question remaining is whether this case involves a "consumer transaction" within the meaning of subdivision 5(b).

The term "consumer transaction" is not defined in the venue statute. *See, Amaya v. Texas Securities Corporation,* 527 S.W.2d 218, 221 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). That being so, we must determine the meaning the legislature intended from the language it used. We are not free to formulate some forced or strained definitions for statutory terms. *Railroad Commission of Texas v. Miller,* 434 S.W.2d 670 (Tex.1968); *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66 (1920). Instead, we are bound to apply the "ordinary signification" to statutory language. Tex.Rev. Civ.Stat.Ann. art. 10. We note that there is no provision in subdivision 5(b) limiting the term "consumer transaction" as used therein to a single individual, and there is no expression of legislative intent whatsoever to so limit the term.

The term "consumer" is a broad generic term and has been held in Texas cases to signify one who uses economic goods and so diminishes their utilities—opposed to producer. *Southern Iron & Metal Company v. Yaffe,* 351 S.W.2d 664 (Tex.Civ.App.—Waco 1961, no writ); *Ex Parte Mehlman,* 127 Tex.Cr.R. 257, 75 S.W.2d 689 (1934). This definition is consistent with that used in other jurisdictions. *See, e. g., J. W. Meadors & Co. v. State,* 89 Ga.App. 583, 80 S.E.2d 86 (1954); *Union Portland Cement Co. v. State Tax Commission,* 110 Utah 135, 170 P.2d 164 (1946); *St. Paul & Tacoma Lumber Co. v. State,* 40 Wash.2d 347, 243 P.2d 474 (1952). In our opinion this definition constitutes the "ordinary signification" of the term consumer. Tex.Rev.Civ.Stat. Ann. art. 10.

Applying this term to the case before us, we have noted that the cattle company purchased the milo as "foodstuff" for cattle. Foodstuff, by its nature, must be used, consumed or devoured to realize its basic value. It has been held that the purchaser of cattle feed is a consumer of that feed. *Colbert Mill & Feed Co. v. Oklahoma Tax Commission,* 188 Okl. 366, 109 P.2d 504 (1941). We have concluded that the cattle company was a "consumer" of the milo involved here and purchasing the grain was a "consumer transaction" within the meaning of the plain language of subdivision 5(b).

Our conclusions are consistent with those announced in *Castleberry v. Acco Feeds, etc.,* 525 S.W.2d 282 (Tex.Civ.App.—Eastland 1975, no writ). In that case, the court held that purchase of cattle feed by a large cattle producer was a "consumer transaction" within the meaning of subdivision 5(b). In arguing for a result different from the one announced in *Castleberry,* Parrish has contended that subdivision 5(b) could not apply in this case because the cattle company is a corporation. According to Parrish, the legislature did not intend for part (b) to operate in favor of corporations. The trial court agreed with Parrish and stated that "a corporation cannot be a 'consumer' " in its conclusion of law. In our opinion, *Castleberry* cannot be distinguished from the case before us on that ground.

As noted above, it is appropriate to determine the legislature's intention from the language of the statute. There is nothing in the statute indicating any legislative intention to exclude corporations from its operation. Absent some clear indication of a contrary intent, we cannot hold that a corporation cannot be a "consumer" under the ordinary signification of that term. The term in no manner excludes corporations from its meaning, and it has been held that a corporation can be a "consumer." *Moses Lake Homes v. State,* 48 Wash.2d 499, 294 P.2d 1113 (1956). Furthermore, the terms of the venue statute have always

been held applicable to corporations and natural persons alike. 59 Tex.Jur.2d Venue § 86 at 495. We see no reason to deviate from this settled rule in giving meaning to the term "consumer."

We sustain the cattle company's points of error. Accordingly, we reverse the judgment of the trial court and render judgment that this cause be transferred to Wheeler County, Texas, in accordance with Tex.R.Civ.P. 89.